THOMAS A. LEARY, PLAINTIFF-RESPONDENT, v. WILLIAM
L. GLEDHILL, DEFENDANT-APPELLANT.

Argued October 22, 1951—Decided November 26, 1951.

*Mr. Charles L. Berlini* argued the cause for the appellant.

*Mr. Charles H. Roemer* appeared for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J.   From a judgment of the Law Division of the Superior Court entered on a jury verdict in favor of the plaintiff the defendant appealed to the Appellate Division of the Superior Court.   We have certified the appeal on our own motion.

The plaintiff and the defendant were friends who had become acquainted while in the military service.   They first

met in 1943 and occasionally thereafter through 1945. They corresponded but did not meet again until Christmas, 1948, when the defendant visited the plaintiff in Germany where he was stationed. At that time the defendant was no longer in the military service but was in Europe attempting to sell tractors for the Franam Corporation. Prior to the defendant's trip to Europe he had corresponded with the plaintiff with reference to an investment in the Franam Corporation as one which would be very profitable. Their correspondence resulted in the plaintiff purchasing $1,000 worth of stock when the defendant went to see him in Germany, the defendant delivering to the plaintiff certificates of stock which he had brought with him to Europe in exchange for the plaintiff's check for $1,000.

In April, 1949, the plaintiff at the defendant's invitation visited him in Paris. The defendant had left the United States with $500 in his possession and after arriving in Europe had been in constant need of money to meet his expenses. In a conversation in a hotel in Paris the defendant told the plaintiff that he needed about $4,000 and that he could raise about $2,000 by selling his Cadillac car. In the plaintiff's presence the defendant made a telephone call to his wife in the United States and instructed her to sell the automobile. The defendant asked the plaintiff to help him, but did not mention anything about selling the plaintiff any shares of stock. The plaintiff said he would think it over for a few days and see what he could do. After returning to his base in Germany the plaintiff mailed the defendant a check payable to the defendant's order for $1,500 without indicating on the check or in the accompanying letter what the money was for. The defendant endorsed the check and converted it into traveller's checks. The parties did not see each other again until the day of the trial, although the plaintiff had made many attempts to see the defendant after they both had returned to the United States, seeking him at his home and calling him on the telephone at various times, but always without success.

The plaintiff instituted this suit against the defendant on two counts, the first for $1,000 and the second for $1,500, but at the outset of the trial the plaintiff moved for a voluntary dismissal of the first count and the pretrial order was amended accordingly. The issue as stated in the amended pretrial order was limited to whether the money given by the plaintiff to the defendant was a loan or an investment in a business venture. At the trial the plaintiff testified that the check for $1,500 was a personal loan to the defendant but this the defendant denied, contending that he had never borrowed any money from the plaintiff. At the end of the plaintiff's case and again at the end of the entire case the defendant moved for an involuntary dismissal on the ground that the plaintiff's proofs were insufficient, there being no promise to repay, no demand for repayment, and no pleading or proof of the law of France where the transaction occurred. These motions were denied, the trial court holding that while it would not take judicial notice of the law of France it would proceed, first, on the presumption that the law involving loans is the same there as in other civilized countries, and, secondly, on the ground that the issue with respect to the law of France had not been set forth in the pretrial order. When the case was submitted to the jury, the defendant objected to the charge on the ground that it did not instruct the jury to find as a fact what the law of France was. The jury returned a verdict in favor of the plaintiff in the sum of $1,500, and from the judgment entered thereon the defendant took this appeal. It is significant that the defendant never proved or even attempted to prove either the delivery of any stock to the plaintiff or a tender thereof. Neither did the defendant attempt to prove or even suggest that the law of France was such as to preclude recovery in the circumstances.

The defendant argues five points on this appeal, none of which has merit:

1. "The motion to dismiss should have been granted where the complaint alleges an express contract of loan and

there is a failure to prove a promise to repay." A loan may be established by a contract implied in fact as well as by an express promise; the only difference between the two is the kind of evidence used to prove the undertaking. At the oral argument the defendant relied on *Allen v. Bunting,* 18 *N. J. L.* 299 (*Sup. Ct.* 1841) holding that a note or a check in the hands of the maker or drawer after payment at the bank, instead of being *prima facie* evidence of so much money lent, is only *prima facie* evidence that the maker or drawer was indebted to the payee at the time he gave the note or check and that it was given in satisfaction of that specific debt. It is difficult to see how this ruling as to the *prima facie* effect of a cancelled check in the plaintiff's hands aids the defendant in view of the testimony given at the trial concerning defendant's need of .$4,000 to pay his expenses, his instructions to his wife by trans-Atlantic telephone to sell his Cadillac car for $2,000, and his request to the plaintiff for a loan, followed by the plaintiff's mailing him a check for $1,500. The issue presented by the pretrial order as to whether or not the plaintiff had given the $1,500 to the defendant as a loan was properly presented to the jury which reached a conclusion supported by the evidence before it.

2. "The trial court erred in failing to dismiss the complaint where the plaintiff failed to prove a demand for repayment of the money." This defense comes with bad grace from a defendant who had so assiduously avoided the efforts of the plaintiff to communicate with him, and no authorities to support it are cited by the defendant in his brief nor did he come forward with any at the oral argument. In the circumstances here the starting of suit is all the demand the defendant is entitled to. We consider that the answer to the defendant's contention is well stated in *section* 264 of the *Restatement of Contracts*:

"Where a contractual promise to pay money is in terms performable on demand by the promisee, but the duty of performance is otherwise unconditional, and neither more specific words nor usage requires a different result, a right of action by the promisee is not conditional on a demand being made."

3. "The rules of law for a foreign country must be pleaded and proved as facts along with the other elements of a cause of action to enable a plaintiff to recover against the defendant." A court will in general take judicial notice of and apply the law of its own jurisdiction without pleading or proof thereof, the judges being deemed to know the law or at least where it is to be found, 9 *Wigmore on Evidence* (*3d ed.*, 1940), 551. Under the common law of England as adopted in this country, however, the law of other countries, including sister states, would not be so noticed and applied by a court, but it was deemed an issue of fact to be pleaded and proved as other material facts had to be, *Title Guarantee and Trust Co. v. Trenton Potteries Co., 56 N. J. Eq.* 441, 444 (*E. & A.* 1897); *Coryell v. Buffalo Union Furnace Co., 88 N. J. L.* 291, 294 (*E. & A.* 1915); *Filhian v. Pennsylvania Railroad Co., 91 N. J. L.* 275, 279 (*E. & A.* 1918); *Giardini v. McAdoo, 93 N. J. L.* 138, 141 (*E. & A.* 1919); *Robins v. Mack International Motor Truck Corp., 113 N. J. L.* 377, 387 (*E. & A.* 1934); *Coral Gables, Inc., v. Kretschmer, 116 N. J. L.* 580, 582 (*E. & A.* 1936); *Franzen v. Equitable Life Assur. Soc., 130 N. J. L.* 457, 459 (*Sup. Ct.* 1943); 9 *Wigmore on Evidence* (*3d ed.* 1940), 554. This common law rule had two great disadvantages; it made every jury pass on questions of law quite beyond its competence and the decision of the jury as to the foreign law was unappealable at common law as were its findings on all questions of fact.

The courts, however, were reluctant to dismiss an action for a failure to plead and prove the applicable foreign law as they would have dismissed it for a failure to prove other material facts necessary to establish a cause of action or a defense. Accordingly the courts frequently indulged in one or another of several presumptions: that the common law prevails in the foreign jurisdiction; that the law of the foreign jurisdiction is the same as the law of the forum, be it common law or statute; or that certain fundamental principles of the law exist in all civilized countries. As a fourth alternative, instead of indulging in any presumption as to the law of the

foreign jurisdiction, the courts would merely apply the law of the forum as the only law before the court on the assumption that by failing to prove the foreign law the parties acquiesce in having their controversy determined by reference to the law of the forum, be it statutory or common law. By the application of these various presumptions the courts have in effect treated the common law rule that foreign law could not be noticed but must be pleaded and proved as if it were a matter of fact merely as a permissive rule whereby either party could, if it were to his advantage, plead and prove the foreign law. Thus the failure to plead and prove the foreign law has not generally been considered as fatal. For a thorough discussion of the presumptions applied in the absence of proof of the foreign law see the notes: "How case determined when proper foreign law not proved," 67 L. R. A. 33–61; and "Determination of case properly governed by law of foreign country which is not proved," 34 L. R. A. (N. S.) 261–274.

In New Jersey, in the absence of proof as to the applicable foreign law, the courts have frequently applied the presumption that the common law exists in the foreign jurisdiction. This presumption had long been recognized in this State when Chief Justice Beasley said in *Waln v. Waln,* 53 N. J. L. 429, 432 (*E. & A.* 1891):

"There was no offer made at the trial to show what the law of Pennsylvania was; and consequently, according to the general rule of law, and which rule has been repeatedly recognized and applied by our own courts, the inference, *juris et de jure,* is that the system there prevalent was that of the common law."

For more recent New Jersey cases in which this presumption has been applied or recognized see *Bodine v. Berg,* 82 N. J. L. 662 (*E. & A.* 1911); *Thayer Mercantile Co. v. First National Bank of Milltown,* 98 N. J. L. 29, 32 (*Sup. Ct.* 1922); *Reingold v. Reingold,* 115 N. J. L. 532, 534 (*E. & A.* 1935); *Coral Gables, Inc., v. Kretschmer,* 116 N. J. L. 580, 583 (*E. & A.* 1936); *Redmond v. N. J. Historical Society,*

132 *N. J. Eq.* 464, 469 (*E. & A.* 1942) ; *Kelly v. Kelly,* 134 *N. J. Eq.* 316, 319 (*Prerog.* 1944) ; and *Shepherd v. Ward,* 5 *N. J.* 92, 106 (1950). This presumption, insofar as the law of the states, territories and other jurisdictions of the United States is concerned, is reenforced by the first section of the Uniform Judicial Notice of Foreign Law Act, *L.* 1941, *c.* 81, § 1, as amended by *L.* 1942, *c.* 104, § 1 (*N. J. S. A.* 2 :98–28).

While our attention has not been directed to any New Jersey cases on the point, this presumption as to the existence of the common law in a foreign jurisdiction is equally applicable in cases involving other common law countries such as England in the absence of proof to the contrary, see *note* 34 *L. R. A.* (*N. S.*) 261, 270, cited *supra*; 20 *Am. Jur., Evidence,* § 181; 31 *C. J. S., Evidence,* § 133, *p.* 767. That the presumption as to the existence of the common law applies to all common law jurisdictions is further borne out by the fact that by virtue of *R. S.* 2 :98–18, originally enacted by *L.* 1860, *c.* 92, § 1 :

"The reports of judicial decisions of other states of the United States and foreign countries may be judicially noticed by the courts of this state as evidence of the common law of such states or countries, * * *."

While the application of the presumption that the common law exists in the foreign jurisdiction works well in many cases, it does not produce sound results in a case where the common law on the subject involved has been substantially changed by statute here and in the foreign state. For example, if a case involved the capacity of a married woman to contract or to hold and convey property, resort to the common law to decide the case might well result in a decision contrary to long established statutory enactments here and in the foreign jurisdiction altering the common law rule. While the presumption as to the existence of the common law in the foreign jurisdiction has the advantages of having been long indulged in by the courts of this and other states and of being incorpo-

rated in the Uniform Judicial Notice of Foreign Law Act, in a proper case consideration might well be given to rejecting it in favor of the presumption that the foreign law is the same as the law of the forum, be it statutory or common law, or even more preferable, in favor of the presumption that the parties by their failure to plead and prove the foreign law acquiesce in the application of the law of the forum as the only law before the court.

In the instant case the transaction occurred in France. Our courts may properly take judicial knowledge that France is not a common law, but rather a civil jurisdiction. It would, therefore, be inappropriate and indeed contrary to elementary knowledge to presume that the principles of the common law prevail there. This does not mean, however, that the plaintiff must fail in his cause of action because of the absence of any proof at the trial as to the applicable law of France. In these circumstances any one of the other three presumptions may be indulged in, i. e., that the law of France is the same as the law of the forum; that the law of France, like all civilized countries, recognizes certain fundamental principles, as, e. g., that the taking of a loan creates an obligation upon the borrower to make repayment; that the parties by failing to prove the law of France have acquiesced in having their dispute determined by the law of the forum.

The court below based its decision upon the presumption that the law of France in common with that of other civilized countries recognizes a liability to make repayment under the facts here present, and its decision is not without substantial merit in reason and support in the authorities, see, for example, *Cuba Railroad Co. v. Crosby*, 222 *U. S.* 473 (1912), and *Parrot v. Mexican Central Railway Co.*, 207 *Mass.* 184, 93 *N. E.* 590 (1911). The utilization of this presumption has decided limitations, however, for in many cases it would be difficult to determine whether or not the question presented was of such a fundamental nature as reasonably to warrant the assumption that it would be similarly treated by the laws of all civilized countries. The pre-

sumption that in the absence of proof the parties acquiesce in the application of the law of the forum, be it statutory law or common law, does not present any such difficulties for it may be universally applied regardless of the nature of the controversy. This view, moreover, is favored by the authorities, see the notes in 67 *L. R. A.* 33 and 34 *L. R. A.* (*N. S.*) 261, cited *supra*, and appears to have been followed in at least one instance in this State, *Sturm v. Sturm*, 111 *N. J. Eq.* 579, 587 (*Ch.* 1932), a case in which the law of Austria was involved. We are of the opinion, therefore, that in the instant case the rights of the parties are to be determined by the law of New Jersey which unquestionably permits recovery on the facts proven.

We recognize, of course, that in certain cases there might be present factors which would make it unreasonable for the court to indulge in any presumption and where the court in the exercise of its sound discretion might require proof of applicable foreign law to be laid before the court, but such is certainly not the situation here. The defendant is in no way prejudiced by the application of the law of this State. If he had desired to raise an issue as to the foreign law, he might have done so in his answer or at the pretrial conference or, with permission of the court, at the trial itself, and himself have introduced proof as to the law of France. It is against the letter and the spirit of our practice to permit him to make the failure of the plaintiff to plead and prove foreign law the basis of a surprise motion addressed to the court either in the course of or at the conclusion of the case.

4. "The rules of law of a foreign country are a question of fact to be determined by the jury, along with the other elements of a cause, to enable a plaintiff to recover against a defendant." This contention is without merit here, for in all cases in which the court in the absence of proof indulges in a presumption as to the applicable foreign law the question is perforce one for the court rather than for the jury; see sections 3 and 5 of the Uniform Judicial Notice of Foreign Law Act (*N. J. S. A.* 2:98–30 and 32) and

*Franzen v. Equitable Life Assur. Soc.,* 130 *N. J. L.* 457, 459–461 *(Sup. Ct.* 1943).

5. "The verdict is against the weight of the evidence." The testimony of the plaintiff and of the defendant was in sharp conflict. The inferences to be drawn were more compatible with the view of the $1,500 being a loan than with its being payment for stock in a business venture. The defendant's need for $4,000, the selling of his automobile to raise $2,000, his requesting the plaintiff for a loan, his failure to deliver any stock to the plaintiff or to tender any, and his evasion of the plaintiff, all conspire to make his story unbelievable. Under our Constitution and the rules of court the verdict of a jury is not to be set aside as against the weight of the evidence unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. *Rule* 1:2–20 (*a*).

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.