UNITED STATES of America,

v.

HING SHAIR CHAN, Defendant.

No. CR 87–576 (JBW).

United States District Court,
E.D. New York.

Feb. 9, 1988.

Andrew J. Maloney, U.S. Atty. by Matthew E. Fishbein, Asst. U.S. Atty., Dept. of Justice, Brooklyn, N.Y., for Government.

Ronald Rubenstein, Kew Gardens, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Defendant was convicted of conspiracy to import heroin and of importation of heroin in amounts greater than 100 grams. *See* 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(A) (1984), 963; 18 U.S.C. § 2. Robert Shum pled guilty to related charges and testified against defendant. The evidence showed that in March 1986, defendant and Shum had been in Hong Kong where they had agreed to ship a large amount of heroin to the United States.

Over defendant's objection, and without an authenticating witness, the government introduced records from the Hotel Regal Meridien in Hong Kong indicating that the defendant had stayed at that hotel from March 10, 1986 to March 20, 1986 and that Shum had stayed in the same hotel for nine of those days. *See, e.g.,* Exhibits 25A and 25B, attached. The government relied upon a foreign certification of these records. *See* Exhibit 25, attached. Shum's bona fides were strongly attacked on cross-examination, so that the hotel records were a significant factor both as part of the government's evidence-in-chief and in buttressing Shum's credibility. Defendant objected that the records were not properly authenticated and were inadmissible hearsay. For the reasons set-forth below, neither of defendant's contentions has merit.

### I. *Confrontation Clause*

█ Defendant has made no challenge under the confrontation clause of the Sixth Amendment to the admissibility of the hotel records. Nevertheless, "the trial court must ... specifically determine, prior to deciding whether to admit the statement, that its introduction would not violate the confrontation clause." *United States v.*

*Oates,* 560 F.2d 45, 81 (2d Cir.1977). "To survive a Confrontation Clause challenge, the statement must bear sufficient indicia of reliability to assure an adequate basis for evaluating the truth of the declaration." *United States v. Davis,* 767 F.2d 1025, 1032 (2d Cir.1985); *see also Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *Reardon v. Manson,* 806 F.2d 39, 43 (2d Cir.1986).

The government sought admission of the hotel records pursuant to 18 U.S.C. § 3505 (1984), governing foreign records of regularly conducted activity. The hearsay portion of section 3505 is modeled on Rule 803(6) of the Federal Rules of Evidence. Application of section 3505 to this case would not impinge on the constitutional right to confront witnesses. Firmly-rooted exceptions to the hearsay rule, such as the business records exception of Rule 803(6), do not offend the confrontation clause. *See Bourjaily v. United States,* —— U.S. ——, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987). Recently, the Ninth Circuit addressed precisely the constitutional question that might have been raised here and concluded that section 3505, in the presence of the "indicia of reliability," does not violate the confrontation clause. *See United States v. Miller,* 830 F.2d 1073, 1077–78 (9th Cir.1987). The numerous and substantial indicia of reliability in this case are described below.

In any event, defendant's interest in confronting the custodians of these hotel records is "remote." *See Reardon, supra,* 806 F.2d at 41 (confrontation clause "not necessarily violated" if "utility of trial confrontation" is "remote"). The custodians would simply give the same testimony offered here by written declaration. In fact defendant has not availed himself of the opportunity offered by the court to go to Hong Kong to depose such witnesses. He has clearly waived direct confrontation and there has been no violation of his constitutional rights.

### II. *Admission under 18 U.S.C. §§ 3505.*

#### A. *Hearsay.*

█ The government relies on 18 U.S.C. § 3505, one section of the Comprehensive

Crime Control Act of 1984, which addresses both the hearsay and the authentication questions. The purpose of the law is to create "a simple, inexpensive substitute for the cumbersome and expensive procedures presently required for the admission of foreign business records." H.Rep. No. 907, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3578, 3580. Section 3505(a)(1) overcomes the hearsay problem by providing for a certification procedure. It reads in part:

(a)(1) In a criminal proceeding in a court of the United States, a foreign record of regularly conducted business activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that—

(A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from the information transmitted by) a person with knowledge of those matters;

(B) such record was kept in the course of a regularly conducted business activity;

(C) the business activity made such a record as a regular practice; and

(D) if such record is not the original, such record is a duplicate of the original;

unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

18 U.S.C. § 3505(a)(1). This language tracks quite closely the language of Federal Rule of Evidence 803(6), which lifts the prohibition against hearsay for records made in the course of regularly conducted activity. Subsection 3505(a)(1) "should be interpreted in the same manner as the comparable language in Rule 803(6) is interpreted." H.Rep. No. 907, *supra, reprinted in* 1984 U.S.Code Cong. & Admin.News at 3581. Because the records at issue have been created in a foreign country, where customs may be different from our own and where the court's subpoena power does not extend, *see* Fed.R.Crim.P. 17(e)(2), the statute establishes the requisite conditions for determining the records' reliability by analogy to those in Rule 803(6).

A "foreign certification" is defined as:

a written declaration made and signed in a foreign country by the custodian of a foreign record of regularly conducted activity or another qualified person that, if falsely made, would subject the maker to criminal penalty under the laws of that country;

18 U.S.C. § 3505(c)(2). The trustworthiness of the foreign certification depends essentially on the deterrent force of the criminal law of the foreign country.

The government initially introduced a photocopy of the hotel records. A "copy" is acceptable under the statute. Section 3505(a)(1) uses the term "or a copy of such record." This phrase should be subject to the same discretionary requirement of "fairness" incorporated in Rule 1002 of the Federal Rules of Evidence. Before the case was submitted to the jury, the government obtained the original records and substituted them for the copies so that, in any event, the best evidence rule is not implicated.

Defendant was notified well in advance of trial of the government's intention to rely on section 3505, yet defense counsel made no motion in advance of trial opposing admission. Under the statute, this failure constitutes a waiver of objection. Such a failure to comply with reasonable notice provisions may be treated as the forfeiture of any right to object, subject to the court's power to allow a late objection "for cause shown." The statute provides in subdivision (b):

At the arraignment or as soon after the arraignment as practicable, a party intending to offer in evidence under this section a foreign record of regularly conducted activity shall provide written notice of that intention to each other party. A motion opposing admission in evidence of such record shall be made by the opposing party and determined by the court before trial. Failure by a party to file such motion before trial shall constitute a waiver of objection to such record

or duplicate, but the court for cause shown may grant relief from the waiver. 18 U.S.C. § 3505(b). Such a provision does not on its face violate defendant's rights to challenge evidence against him. *See Taylor v. Illinois,* — U.S. —, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). "[T]he client must accept the consequences of the lawyer's decision to forgo cross-examination" or the right to object to evidence. *Id.,* 108 S.Ct. at 657.

Here no cause for failing to object was shown. Nevertheless the objection was entertained at trial in order not to punish defendant for the failure of his attorney. *See id.,* 108 S.Ct. at 665 (Brennan, J., dissenting).

The hotel records meet the hearsay exception requirements of section 3505 and the confrontation clause. Along with the hotel records, the government offered a written declaration said to have been made by one Dan Lee Wing-hon, who is said to be the Front Office Manager of the Hotel Regal Meridien. Mr. Lee attested that the records "were made at or near the time of the occurrence of the matters set forth therein by or from information transmitted by a person with knowledge of those matters;" they "were kept in the course of a regularly conducted business activity" and keeping such records was "a regular practice" of the hotel. *See* Exhibit 25; *see also Miller, supra,* 830 F.2d at 1077 (approving similar certifications under section 3505). The name "Dan Lee" is also written on the upper-right corner of one of the hotel records. *See* Exhibit 25A.

While itself hearsay, this certification statement was properly considered by the court as a predicate for the admissibility of the hotel record. *See* Fed.R.Evid. 104(a) (the court "is not bound by the rules of evidence" in determining admissibility). Moreover, the court can take judicial notice under Rules 104(a) and 201 of the Federal Rules of Evidence on a question of admissibility, even in a criminal case. The court takes notice of the fact that Hong Kong's trade and service economy is sophisticated and its hotel business practices are much like those in the United States, making it likely that the records were as authentic and accurate as they appeared to be.

Mr. Lee's written declaration purports to have been made before James Mack Sui-ky, a "Commissioner for Oaths, Judiciary" at the Courts of Justice in Hong Kong, who affixed his seal. Mr. Lee also stated in the declaration that he knew "that a false statement could subject me to criminal penalties under the laws of Hong Kong." Exhibit 25.

 Mr. Lee's sworn declaration about the records meets the "foreign certification" requirement of section 3505(c)(2). Although the issue was not raised, the court took the precaution of attempting to ascertain the significance of a declaration sworn before a "Commissioner for Oaths, Judiciary" in Hong Kong. The court may take judicial notice of foreign law and legal terms under Rule 26.1 of the Federal Rules of Criminal Procedure, considering any relevant source whether or not submitted by a party. Accordingly, at the court's direction, a law clerk telephoned the Hong Kong Trade Office, affiliated with the Consulate of the United Kingdom, in New York. The Hong Kong Trade Office reported that the Commissioner for Oaths is a "member of the judiciary" with full judicial power to certify declarations, somewhat like a magistrate and with significantly greater authority than a notary public. The law clerk reported this information to the court in camera and ex parte. These communications were reported to counsel after the event. According to the English Law Dictionary 185 (1986), a "commissioner of oaths" is a "solicitor appointed by the Lord Chancellor to administer affidavits which will be used in court." Jowitt's Dictionary of English Law 1268–69 (2nd ed. 1977) notes that oaths administered by a commissioner of oaths are subject to the Perjury Act of 1911. Such a sworn statement fulfills the demands of section 3505(c)(2) and is itself an indicator of the reliability of the statement. *See Miller, supra,* 830 F.2d at 1077 (admitting under section 3505 records certified by sworn declarations before "a judge," a "public prosecutor," and "a notary public").

If the issue had been raised by counsel, the court would have obtained a copy of the relevant Hong Kong statutes and rules. But in the hurly-burly of trial, the court saw no need to delay matters on this point, about which there was no real dispute. In the absence of any argument to the contrary, the court may assume that the foreign law is the same as forum law on the point. *See, e.g.,* Fed.R.Civ.P. 44.1; Fed.R. Crim.P. 26.1; *Tidewater Oil Co. v. Waller,* 302 F.2d 638, 641 (10th Cir.1962); *Leary v. Gledhill,* 8 N.J. 260, 84 A.2d 725, 728–29 (1951); 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2447 (1971 & Supp.1987). This assumption is bolstered by the fact that Hong Kong, like the United States, is a common law state. *Cf. Leary, supra.*

■ The records themselves bear additional indicia of reliability. It is well-known that Hong Kong is a British colony with business practices much like those in the United States, and the Regal Meridien is part of an international hotel chain with several locations in this country. The court takes judicial notice of these matters. Thus, the records themselves suggest that they were kept in accordance with standard Anglo–American business practice. Furthermore, Hong Kong law apparently requires that such records be kept by hotels, adding credence to the truthfulness of the information contained in the records. *See United States v. Leal,* 509 F.2d 122, 127 & n. 2 (9th Cir.1975) (quoting Laws of Hong Kong, ch. 115). The name and address of the hotel are prominently displayed on the records. The records show daily telephone and service charges for both Chan and Shum throughout the period in question.

The hotel records were corroborated by the defendant's self-authenticating passport, containing his photograph and admitted without objection. The dates listed on the hotel records match the dates of entry into and exit from Hong Kong marked on the passport. The hotel records correctly list defendant's home address and passport number. The defense offered neither evidence nor argument to show that the records were in any way unreliable or untrustworthy.

The business entry exception is a firmly established and central part of the hearsay rule. This is true despite the fact that the business entry exception, an outgrowth of two centuries-old common law doctrines, was first codified by legislatures only sixty years ago, under the leadership of Professor Edmund M. Morgan. The reliability of business records rests in general on a complex organization's need to keep accurate records, and on its internal discipline: employees who keep inaccurate records will be reprimanded or lose their jobs. Hotel records carry with them an added guarantee: the guest will ordinarily check the records upon leaving the hotel and will insist on immediate correction of any error before paying the bill. Here the bill indicated that it was paid in cash and coupon.

The records show that someone signed defendant's name. We can assume for purposes of admissibility that this was actually the name of the person who checked in and paid and that the person using that name was actually the defendant. Corroboration comes from the defendant's passport.

One could conceive of a scenario in which defendant was not at the Hotel Regal Meridien despite all this documentation. Perhaps Shum was trying to frame Chan and had someone impersonate the defendant. Defendant's counsel did not so argue to the jury. A jury, steeped in the bizarre world of television and politics, might have accepted such a far-fetched explanation and given little or no weight to the documents. But such remote possibilities do not form the basis for an exclusionary rule. We follow the more commonsense approach of allowing the jury to decide probative force so long as the there is a reasonable ground for the jury's evaluation of generally trustworthy hearsay.

### B. *Authentication.*

■ In addition to the hearsay question, defendant raises an authentication objection. As described above, Mr. Lee's oath meets the "foreign certification" require-

ments of section 3505(c)(2) The statute answers any doubts about authentication by stating that "[a] foreign certification under this section shall authenticate such record or duplicate." 18 U.S.C. § 3505(a)(2). *See* Fed.R.Evid. 901(b)(10) (document may be authenticated by "any method ... provided by Act of Congress...."). Thus, authentication is established under section 3505(a)(2) when the custodian attests to the document's origins under threat of criminal penalties for false statements. These criteria are met by Mr. Lee's declaration.

### III. *Admission under pre–3505 law.*

■ Even had section 3505 not been enacted, the records offered here would have been admissible under the normal rules of evidence. The records are authenticated under Rule 901 of the Federal Rules of Evidence because the sworn statement of Mr. Lee supports a finding that the documents are what the government claims them to be. Both the records and Mr. Lee's stamped, sealed declaration are also authenticated under Rule 902, because the sworn statement is a foreign public document under Rule 902(3), and because the hotel records bear printed and embossed trade inscriptions indicating their origin in the Hotel Regal Meridien under Rule 902(7). In addition, internal evidence supports both authenticity and reliability under Rule 901(4).

The records would be admissible under the normal hearsay rules because, as indicated above, they meet the standards of Rule 803(6). There are multiple indicia of reliability, and no evidence or suggestion of lack of trustworthiness.

The records also meet the strictures of Rule 803(24). They have strong circumstantial guarantees of trustworthiness. They are offered to prove a material fact, and are more probative of the overlapping dates of Chan's and Shum's stays in exactly the same hotel than is any other evidence, except perhaps eyewitness testimony from witnesses in Hong Kong, which would be unreasonably difficult to obtain. The records are particularly probative of Chan's and Shum's simultaneous continuous stays at the Hotel Regal Meridien over the period from March 10 to March 20 because they show daily telephone and service charges throughout the period. These charges were paid by cash and coupon, not by check or credit card, so there is not the additional circumstantial guarantee that would be provided by additional signatures. Nevertheless, there are sufficient guarantees of trustworthiness to admit the documents for the jury's evaluation. The interests of justice are well served by this inexpensive and efficient method of proof.

Query, if no certification had been supplied, whether these general rules would allow admission of the hotel records in evidence in this case. The answer was "yes" prior to the adoption of section 3505. But section 3505 arguably includes by implication a rule of preference requiring the government to produce a certificate where possible. (The certificate is most clearly preferred when foreign records are offered under Rules 803(24) and 804(b)(5). This question need not be decided in the present case.

### IV. *Conclusion.*

The hotel records meet the hearsay and authentication provisions of 18 U.S.C. § 3505, and of Federal Rules of Evidence 803, 901 and 902. A motion for a new trial based upon their admission is denied.

So ordered.

CER : JCR : jcr
F. #
db/8/25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

................................. X

UNITED STATES OF AMERICA

    - against -

HING SHAIR CHAN,

         Defendant.

................................. X

FOREIGN CERTIFICATION
OF BUSINESS RECORDS
PURSUANT TO TITLE 18,
UNITED STATES CODE,
SECTION 3505

87 Cr. 576 (JBW)

    I   LEE Wing-hong, Dan   , holder of Hong Kong Identity
Card No.   D081360(6)   , ~~swear by almighty God~~/do solemnly and
sincerely declare that :-

    I am   LEE Wing-hon, Dan   , currently employed as the
Front Office Manager   , at the Regal Meridian Hotel, Mody Road,
Kowloon, Hong Kong. My responsibilities include keeping custody of hotel
records.

    The attached records were made at or near the time of the
occurrence of the matters set forth therein by or from information
transmitted by a person with knowledge of those matters.

2.

The attached records were kept in the course of a regularly conducted business activity.

The business activities of the hotel make such records as a regular practice.

The attached records are accurate duplicates of the original records.

I make this written declaration freely and voluntarily with the knowledge that a false statement could subject me to criminal penalties under the laws of Hong Kong. And further, deponent sayeth not.

And I make this solemn declaration conscientiously believing the same to be true and by virtue of the Oaths and Declarations Ordinance

Declared at the Courts of Justice,
Hong Kong this 2 0 JAN 1988 day of
19 .

Before me,

James MACK Sui-ky
Commissioner for Oaths
JUDICIARY

Subscribed and sworn/affirmed before me this _____ day of January, 1988.

Commissioner of Oaths

CHANG, H M/M

HOTEL REGAL
**MERIDIEN**
HONG KONG
MODY ROAD KOWLOON HONG KONG

GOVERNMENT EXHIBIT 25A

*Bienvenue!*

ROOM NUMBER
RATE
ARRIVAL DATE 3/10/86
DEPARTURE DATE 3/14/86

## REGISTRATION

| ACCT. NO. | ARRIVAL DATE | DEPARTURE DATE | ARRIVAL TIME | NO. OF ROOMS | ROOM TYPE |
|---|---|---|---|---|---|
| 491087 | 3/10/86 | 3/14/86 | *6PM* | 1 | MODERATE |

| DAILY RATE | NO. OF GUESTS | ADV. DEPOSIT | ROOM NO. | A 5% GOVERNMENT TAX & 10% SERVICE CHARGE WILL BE ADDED TO YOUR BILL. |
|---|---|---|---|---|
| 500 | 2 | .00 | 124 | |

T/A
A/R

MR./MRS./MISS (PLEASE PRINT)

CHANG, H M/M

SURNAME CHANG   FIRST NAME HING   INITIAL S

FULL HOME ADDRESS: 50-21-64 Street WOODSIDE
NEW YORK   N.Y   OVERSEA BUYER
CITY                      COUNTRY

NAME OF COMPANY   AIR HONG KONG

OCCUPATION

NATIONALITY U.S.

PASSPORT NO. E785688

DATE OF BIRTH 3 M / 10 D / 86

WHERE FROM NEW YORK

CARRIER

NEXT DESTINATION

CARRIER

PAYMENT BY ☐ CASH ☑ COUPON ☐ T/A ☐ CO. ☐ CREDIT CARD ...............

DID YOU STAY WITH US BEFORE?   YES ☐   NO ☐   CHECK OUT TIME IS 12 NOON.

GUEST SIGNATURE

NOTICE
OUR LIABILITY FOR VALUABLES IS GOVERNED BY CHAPTER 158 OF THE HOTEL PROPRIETORS ORDINANCE REVISED EDITION 1964. GUESTS ARE ADVISED TO READ THE NOTICE AT THE RECEPTION DESK. THERE ARE SAFETY DEPOSIT BOXES AVAILABLE FOR THE USE OF THE HOTEL GUESTS FREE OF CHARGE.
UNLESS OTHERWISE ARRANGED GUESTS ARE REQUESTED TO SETTLE HIS/HER ACCOUNT UPON PRESENTATION OF HOTEL BILL.

HOTEL REGAL
MERIDIEN
HONG KONG
MODY ROAD KOWLOON HONG KONG

CHANG, HING S HERNY M/M (RM)
AIR HONG KONG
50-21-64 STREET WOODSIDE
NEW YORK, USA

| ARRIVAL | 3/10/86 |
| DEPARTURE | 3/20/86 |
| NO. IN PARTY | 2 |
| RATE | 500.00 |

ACCOUNT NO.: 0491087    ROOM NO.: 1231

| NO. | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 1 | 3/10/86 | ROOM/1231/13191 | $500.00 |
| 2 | 3/10/86 | ROOM SERVICE CHARGE/1231/13192 | $50.00 |
| 3 | 3/10/86 | ROOM TAX/1231/13193 | $25.00 |
| 4 | 3/11/86 | ROOM/1231/15225 | $500.00 |
| 5 | 3/11/86 | ROOM SERVICE CHARGE/1231/15226 | $50.00 |
| 6 | 3/11/86 | ROOM TAX/1231/15227 | $25.00 |
| 7 | 3/12/86 | ROOM/1231/17097 | $500.00 |
| 8 | 3/12/86 | ROOM SERVICE CHARGE/1231/17098 | $50.00 |
| 9 | 3/12/86 | ROOM TAX/1231/17099 | $25.00 |
| 10 | 3/13/86 | ROOM/1231/18905 | $500.00 |
| 11 | 3/13/86 | ROOM SERVICE CHARGE/1231/18906 | $50.00 |
| 12 | 3/13/86 | ROOM TAX/1231/18907 | $25.00 |
| 13 | 3/14/86 | ROOM/1231/20605 | $500.00 |
| 14 | 3/14/86 | ROOM SERVICE CHARGE/1231/20606 | $50.00 |
| 15 | 3/14/86 | ROOM TAX/1231/20607 | $25.00 |
| 16 | 3/15/86 | ROOM/1231/8522 | $500.00 |
| 17 | 3/15/86 | ROOM SERVICE CHARGE/1231/8523 | $50.00 |
| 18 | 3/15/86 | ROOM TAX/1231/8524 | $25.00 |
| 19 | 3/16/86 | ROOM/1231/10535 | $500.00 |

CONTINUED....

APPROVED BY

| COMPANY | STREET |

I AGREE THAT MY LIABILITY FOR THIS BILL IS NOT WAIVED AND AGREE TO BE HELD PERSONALLY LIABLE IN THE EVENT THAT THE INDICATED PERSON, COMPANY OR ASSOCIATION FAILS TO PAY FOR ANY PART OR THE FULL AMOUNT OF THESE CHARGES

| CITY | POSTAL CODE |

SIGNATURE:

**HOTEL REGAL**
**MERIDIEN**
**HONG KONG**
MODY ROAD KOWLOON HONG KONG

CHANG, HING S HERNY M/M (RM)
    AIR HONG KONG
50-21-64 STREET WOODSIDE
NEW YORK, USA

| ARRIVAL | 3/10/86 |
|---|---|
| DEPARTURE | 3/20/86 |
| NO. IN PARTY | 2 |
| RATE | 500.00 |

ACCOUNT NO.: 0491087    ROOM NO.: 1231

| NO. | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 20 | 3/16/86 | ROOM SERVICE CHARGE/1231/10536 | $50.00 |
| 21 | 3/16/86 | ROOM TAX/1231/10537 | $25.00 |
| 22 | 3/17/86 | ROOM/1231/12785 | $500.00 |
| 23 | 3/17/86 | ROOM SERVICE CHARGE/1231/12786 | $50.00 |
| 24 | 3/17/86 | ROOM TAX/1231/12787 | $25.00 |
| 25 | 3/18/86 | ROOM/1231/15368 | $500.00 |
| 26 | 3/18/86 | ROOM SERVICE CHARGE/1231/15369 | $50.00 |
| 27 | 3/18/86 | ROOM TAX/1231/15370 | $25.00 |
| 28 | 3/19/86 | ROOM/1231/17492 | $500.00 |
| 29 | 3/19/86 | ROOM SERVICE CHARGE/1231/17493 | $50.00 |
| 30 | 3/19/86 | ROOM TAX/1231/17494 | $25.00 |
| 32 | 3/20/86 | HOTEL EXPENSES/1231/491087 TOM | $5,750.00CR |
| | | *BALANCE DUE* | 5.00 |

APPROVED BY

COMPANY                    STREET

I AGREE THAT MY LIABILITY FOR THIS BILL IS NOT WAIVED AND
AGREE TO BE HELD PERSONALLY LIABLE IN THE EVENT THAT
THE INDICATED PERSON, COMPANY OR ASSOCIATION FAILS TO
PAY FOR ANY PART OR THE FULL AMOUNT OF THESE CHARGES

CITY                       POSTAL CODE

**SIGNATURE:**

HOTEL REGAL
**MERIDIEN**
HONG KONG
MODY ROAD KOWLOON HONG KONG

GOVERNMENT
EXHIBIT
25B

CHANG, HING S HENRY   M/M (INC)

| | | |
|---|---|---|
| ARRIVAL | 3/10/86 |
| DEPARTURE | 3/20/86 |
| NO. IN PARTY | |
| RATE | .00 |

AIR HONG KONG
50-21-64 STREET WOODSIDE
NEW YORK, USA

ACCOUNT NO.: 0500194    ROOM NO.: 1231

| NO. | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 1 | 3/11/86 | LONG DISTANCE CALL/1231/206108 | $87.20 |
| 2 | 3/11/86 | LONG DISTANCE CALL/1231/206112 | $33.10 |
| 3 | 3/11/86 | LONG DISTANCE CALL/1231/206095 | $60.10 |
| 4 | 3/11/86 | LE GRAND CAFE/1231/263 39 | $111.10 |
| 5 | 3/11/86 | MINI BAR/1231/407727 | $28.00 |
| 6 | 3/12/86 | LONG DISTANCE CALL/1231/206272 | $47.80 |
| 7 | 3/12/86 | LONG DISTANCE CALL/1231/206289 | $58.90 |
| 8 | 3/12/86 | LONG DISTANCE CALL/1231/206319 CWY | $47.80 |
| 9 | 3/13/86 | LONG DISTANCE CALL/1231/206454 | $257.80 |
| 10 | 3/13/86 | LONG DISTANCE CALL/1231/206476 | $63.80 |
| 11 | 3/14/86 | LONG DISTANCE CALL/1231/206680 | $67.50 |
| 12 | 3/14/86 | LONG DISTANCE CALL/1231/206715 WANG | $39.50 |
| 13 | 3/15/86 | LONG DISTANCE CALL/1231/206771 | $71.50 |
| 14 | 3/15/86 | LE GRAND CAFE/1231/249 53 | $47.30 |
| 15 | 3/15/86 | LONG DISTANCE CALL/1231/206900 | $47.90 |
| 16 | 3/16/86 | MINI BAR/1231/407741 | $39.00 |
| 17 | 3/17/86 | LONG DISTANCE CALL/1231/207098 | $70.00 |
| 18 | 3/17/86 | MINI BAR/1231/407745 | $26.00 |
| 19 | 3/18/86 | LONG DISTANCE CALL/1231/207295 | $26.00 |

CONTINUED....

APPROVED BY

COMPANY                    STREET

I AGREE THAT MY LIABILITY FOR THIS BILL IS NOT WAIVED AND AGREE TO BE HELD PERSONALLY LIABLE IN THE EVENT THAT THE INDICATED PERSON, COMPANY OR ASSOCIATION FAILS TO PAY FOR ANY PART OR THE FULL AMOUNT OF THESE CHARGES.

CITY                    POSTAL CODE

**SIGNATURE:**

## HOTEL REGAL
## MERIDIEN
### HONG KONG
MODY ROAD KOWLOON HONG KONG

```
CHANG, HING S HENRY  M/M (INC)   ARRIVAL      3/10/86
   AIR HONG KONG                 DEPARTURE    3/20/86
50-21-64 STREET WOODSIDE         NO. IN PARTY
NEW YORK,_USA                    RATE           .00
```

ACCOUNT NO.: 0500194    ROOM NO.: 1231

| NO. | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 20 | 3/18/86 | MINI BAR/1231/399852 | $28.00 |
| 21 | 3/19/86 | LONG DISTANCE CALL/1231/207733 | $109.30 |
| 22 | 3/19/86 | MINI BAR/1231/400664 CWY | $54.00 |
| 23 | 3/19/86 | CASH PAYMENT/1231/500194 | $1,421.60CR |
| 24 | 3/20/86 | LONG DISTANCE CALL/1231/500194 ADV.TOM | $71.70 |
| 25 | 3/20/86 | MINI BAR/1231/400678 TOM | $15.00 |
| 26 | 3/20/86 | CASH PAYMENT/1231/500194 TOM | $86.70CR |
|  |  | *BALANCE DUE* | $.00 |

APPROVED BY

COMPANY                        STREET

I AGREE THAT MY LIABILITY FOR THIS BILL IS NOT WAIVED AND AGREE TO BE HELD PERSONALLY LIABLE IN THE EVENT THAT THE INDICATED PERSON, COMPANY OR ASSOCIATION FAILS TO PAY FOR ANY PART OR THE FULL AMOUNT OF THESE CHARGES.

CITY                        POSTAL CODE

**SIGNATURE:**