**UNITED STATES of America,**

v.

**Alex KOROGODSKY, Defendant.**

**No. S3 95 Cr. 1091 (SAS).**

United States District Court,
S.D. New York.

April 1, 1998.

---

Peter C. Sprung, United States Attorney's Office, New York City, for United States.

Julia Pamela Heit, Joel Winograd, Corey Winograd, New York City, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

On March 16, 1998, Defendant Alex Korogodsky ("Korogodsky") requested the issuance of a letter rogatory to Russian authori-

ties.[1] Korogodsky also moves to dismiss the Indictment, arguing that his inability to subpoena foreign witnesses will (1) deprive him of his Sixth Amendment right to compulsory process, and (2) violate the confrontation clause of the Sixth Amendment.[2]

## I. Factual and Procedural Background

Korogodsky is charged, *inter alia*, with conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 371 and 1343. The charges arise out of an alleged scheme by Korogodsky and others ("the conspirators") to defraud 30 Russian firms (the "victim firms") of over $10 million and to transport the funds to the United States.

The Indictment alleges that in approximately January 1992, the conspirators traveled to Moscow where, using assumed names they posed as representatives of a phony U.S. firm called "Newtel Co." Using their false identities, they offered to sell to Russian firms at a consumer trade exhibition an array of western-manufactured goods and products. Indictment at ¶¶ 6(a), 6(b). The Indictment further alleges that by making false promises to deliver the goods and products, the conspirators induced the victim firms to enter into purported contracts, pursuant to which the firms made advance payments to Newtel totaling approximately $4.7 million. *Id.* at ¶¶ 6(d) and (e). Thereafter, the conspirators allegedly kept the proceeds and did not deliver any of the goods to the victim firms. *Id.* at ¶ 6(f).

The Government has represented that it expects to call witnesses from only five of the 30 victim firms. The Government will apparently prove that the conspirators attempted to defraud the remaining 25 victim firms by offering (1) accomplice testimony, (2) the purported contracts between the conspirators and the victim firms, and (3) bank documents allegedly reflecting money transfers from the victim firms to Newtel. These contracts and bank records will be offered pursuant to 18 U.S.C. § 3505.[3]

## II. Korogodsky's Letter Rogatory Request

Korogodsky's letter rogatory seeks sworn statements from 32 persons who fall into three categories: (1) representatives of victim firms; (2) representatives of banks and other businesses that provided the victim firms with financing to make payments to Newtel; and (3) representatives of companies that agreed to insure the victim firms' performance under the contracts. The Government does not intend to call any of these individuals at trial.

Korogodsky's letter rogatory would require these persons to provide written information about the following: their educational background and employment history; background information about the formation, ownership, capitalization and bank accounts of their firm; their dealings, if any, with Newtel, Korogodsky or (regarding the banks and insurers) Newtel's contract partners; any criminal record of the witness, his company, or their status as a target or subject of a criminal or civil investigation; any physical or mental disability or emotional disturbance

---

1. Korogodsky initially made a letter rogatory request on December 1, 1997. Plea discussions ensued. When those discussions broke down, Defendant renewed his request. The March 16, 1998 letter rogatory is substantially similar to the December 1, 1997 letter rogatory.

2. Korogodsky initially moved to dismiss on these grounds in March 1997. The Court reserved judgment on these issues while Defendant considered the option of requesting letters rogatory.

3. Section 3505 provides, in pertinent part, that: (a)(1) In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded by the hearsay rule if a foreign certification attests that—

(A) such record was made at, or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

(B) such record was kept in the course of a regularly conducted business activity;

(C) the business activity made such a record as regular practice; and

(D) if such record is not the original, such record is a duplicate of the original;

unless the source of the information or the method or circumstances of its preparation indicate lack of trustworthiness.

(2) A foreign certification under this section shall authenticate such record or duplicate.

or drug or alcohol addiction of the witness; and any payments, leniency promises or immunity grants from law enforcement officials.

Korogodsky contends that he should be permitted to pursue the letter rogatory because it: (1) might generate evidence of the victim firms' own misconduct; and (2) would allow him to test the reliability of the § 3505 foreign certifications. The Government opposes the letter rogatory request, in part, because it believes that obtaining responses to the request may take months or even years.

## III. Discussion

### A. *Korogodsky's Letter Rogatory Request*

#### 1. *Letters Rogatory in Criminal Cases*

■ The use of depositions in criminal cases is governed by Fed.R.Crim.P. 15, which permits a party in "exceptional circumstances" to depose its own witness in order to preserve the witness' testimony. Rule 15(d) directs that depositions are to be taken in the manner provided in civil actions, and Fed.R.Civ.P. 28(b)(3) authorizes the taking of depositions in foreign countries "pursuant to a letter rogatory." Thus, a court has discretion to issue letters rogatory on behalf of a party in a criminal action pursuant to Rule 15. *See United States v. Salim,* 855 F.2d 944, 948 (2d Cir.1988); *United States v. Steele,* 685 F.2d 793, 809 (3d Cir.1982).

■ Courts have interpreted the "exceptional circumstances" standard of Rule 15 to require (1) that the witness will be unavailable at trial; and (2) that the information sought is material to the party's case. *See United States v. Dillman,* 15 F.3d 384, 389 (5th Cir.1994) (district court did not err in refusing to grant request for Rule 15 deposition of overseas declarant whose testimony was not material); *United States v. Drogoul,* 1 F.3d 1546, 1552 (11th Cir.1993) (reversing district court's denial of government's request to depose 13 witnesses in Italy, where the witnesses would be unavailable at trial and their testimony was material); *United*

States v. Ismaili, 828 F.2d 153, 159, 161 (3d Cir.1987) (district court did not abuse its discretion by denying defendant's request for Rule 15 depositions of foreign witnesses who were either available to testify at trial or whose testimony was not material); *United States v. Johnpoll,* 739 F.2d 702, 708–709 (2d Cir.1984) (district court properly granted request for Rule 15 depositions of Swiss witnesses whose testimony was material and who were unavailable for trial). The burden is on the party seeking the foreign deposition to prove such exceptional circumstances. *See Drogoul,* 1 F.3d at 1552; *United States v. Fuentes–Galindo,* 929 F.2d 1507, 1510 (10th Cir.1991); *Ismaili,* 828 F.2d at 159. Thus, to obtain a letter rogatory, the moving party must prove both the materiality of the information sought and the witness' unavailability.

#### 2. *Purpose 1: Proving the Victim Firms' Own Misconduct*

##### a) *Materiality*

■ Korogodsky's first asserted purpose for questioning the officers of the victim firms is to establish that these firms were themselves engaged in criminal misconduct when they allegedly contracted with Newtel. Thus, as an initial matter, Korogodsky must show that evidence of the victim firms' alleged wrongdoing would be material to his defense.

To convict Korogodsky of the wire fraud charges, the Government must prove that the conspirators contracted to sell goods to the victim firms with the intent to defraud them. It is no defense that the victims of the fraud may have been engaged in some misconduct. Moreover, the Government does not intend to call any of the individuals whom Korogodsky seeks to depose. Thus, the credibility of the victim firms' officers will not be an issue at trial.[4] Accordingly, Korogodsky's letter rogatory questions concerning the possible misconduct of the victim firms are not rele-

---

4. It appears that the only testimony of victim firm employees which Korogodsky will not have an opportunity to challenge through cross-examination is the employees' § 3505 certifications

that Newtel contracts wire obtained from the victim firms' files. Defendant's right to confront these witnesses is discussed below in Part III.A.3.

vant, much less material, to the wire fraud counts with which he is charged.[5]

### b) *Unavailability*

Korogodsky has also failed to show that the prospective deponents would be unavailable at trial. As the Eleventh Circuit has noted, the showing of unavailability "need not be conclusive before the deposition can be taken," *Drogoul*, 1 F.3d at 1553, because " '[i]t would be unreasonable and undesirable to require the [party seeking the deposition] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition.' " *Id.* (quoting *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir.1985)). Additionally, it is proper for the court to accept the oral representations of counsel with respect to the unavailability of a witness, though affidavits are preferred. *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir.1980).

Here, the defendant has made no representation whatsoever that the potential deponents would be unavailable at trial. In fact, at oral argument defense counsel suggested that the deponents could well be available to testify at trial. Transcript of Conference of July 7, 1997(Tr.) at 10. Counsel argued that in light of Defendant's concern with the possibility of perjury by witnesses in Russia, Defendant would not seek to introduce the out-of-court testimony of individuals whom it sought to question by way of letter rogatory. *Id.* Rather, counsel expressed a hope that these individuals might testify voluntarily at trial, commenting that "[p]eople might really like a trip to New York." *Id.* In the nine months that have passed since counsel stated this position, Defendant has made no representation that the potential deponents are unwilling to testify at trial.

### 3. *Purpose 2: Challenging the § 3505 Certification*

■ Korogodsky argues that under the confrontation clause of the Sixth Amendment, he has a right to the letter rogatory as a means of determining the reliability of the Government's § 3505 certifications. The confrontation clause does not bar the statement of a hearsay declarant who is unavailable to testify at trial, so long as his statement "bears sufficient indicia of reliability to assure an adequate basis for evaluating the truth of the declaration." *United States v. Davis*, 767 F.2d 1025, 1032 (2d Cir.1985).

■ Several courts have addressed the question whether the admissibility of evidence pursuant to § 3505 violates the confrontation clause because the records custodian is unavailable for cross-examination. These courts have uniformly held that so long as the documents bear sufficient indicia of reliability, the confrontation clause is not violated.[6] *See United States v. Ross*, 33 F.3d 1507, 1515–17 (11th Cir.1994) (Spanish business records); *United States v. Sturman*, 951 F.2d 1466, 1489–90 (6th Cir.1991) (foreign bank records); *United States v. Strickland*, 935 F.2d 822, 830–31 (7th Cir.1991) (Austrian bank records); *United States v.*

---

**5.** Additionally, Korogodsky has not suggested that he has a good faith basis for believing that the victim firms might have been involved in misconduct. He appears to be seeking the letter rogatory as a general discovery device—which is not one of the accepted purposes of a letter rogatory. *See Ismaili*, 828 F.2d at 159 (Rule 15 depositions are to be taken only to preserve the testimony of prospective witnesses for use at trial).

**6.** Restating this basic principle of law does not address the admissibility of the Government's proposed evidence in this case under § 3505. Generally, to survive a confrontation clause challenge, the Government must demonstrate not only that the evidence bears sufficient indicia of reliability, but also that the out-of-court declarant is unavailable to testify at trial. *See Ohio v.*

*Roberts*, 448 U.S. 56, 73–74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *United States v. Casamento*, 887 F.2d 1141, 1169 (2d Cir.1989). This unavailability requirement is satisfied only where the " 'prosecutorial authorities have made a good-faith effort to obtain [the declarant's] presence at trial.' " *Roberts*, 448 U.S. at 74, 100 S.Ct. 2531 (quoting *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). However, the Second Circuit has indicated that the Government need not prove the unavailability of a foreign witness who has authenticated foreign records where (1) the indicia of reliability requirement is satisfied, and (2) the defendant has had some opportunity before trial to challenge the witness' testimony. *Davis*, 767 F.2d at 1031; *see also United States v. Hing Shair Chan*, 680 F.Supp. 521, 522 (E.D.N.Y.1988) (Weinstein, J.).

*Miller,* 830 F.2d 1073, 1076–78 (9th Cir.1987) (Swiss and Cayman bank records); *Hing Shair Chan,* 680 F.Supp. at 521–26 (hotel records from Hong Kong).

However, none of these decisions directly addresses the issue presented here: Under what circumstances should a court grant a defendant's pre-trial request to depose a company's officers, via letter rogatory, in order to determine the reliability of the company's records. In *Miller,* the court suggested that litigants should generally be afforded this opportunity, noting that if defendant had desired to challenge the trustworthiness of the foreign bank records, he should have done so by way of deposition, rather than by asserting a violation of the confrontation clause. *See Miller,* 830 F.2d at 1077–78.

■■■ A defendant is entitled to a letter rogatory which questions a foreign witness who has submitted a § 3505 certification, but only with respect to the reliability of the relevant document. This approach affords a defendant the opportunity to challenge the testimony that the government intends to use against him at trial. The question, then, is whether the questions propounded by Korogodsky concern the reliability of either the Newtel contracts obtained from the files of the victim firms or money transfer records obtained from the Russian banks.

### a) *Questioning of the Victim Firms Concerning the Authenticity of the Contracts Between Them and Newtel* .

Korogodsky poses general questions to many officers of the victim firms concerning corporate structure and wrongdoing, but not record-keeping. Even if some of the victim firms were engaged in wrongdoing, this is not a basis on which to challenge the reliability of the contracts obtained from their files. A company engaged in misconduct is just as likely as any other company to keep accurate copies of the contracts to which it is a party.

### b) *Questioning of Banks Concerning the Authenticity of Money Transfer Records*

There is even less justification for permitting Korogodsky to depose bank officials concerning the reliability of the money transfer records. The Defendant has not suggested that the banks themselves were engaged in any misconduct, much less that the banks had a motive to maintain inaccurate records.[7] Nor do Korogodsky's questions concern the banks' procedures for maintaining money transfer records.

### c) *Questioning of the Insurance Companies*

Finally, because it appears that the Government does not intend to introduce documents obtained from Russian insurance companies, there is no basis for questioning officers of these companies.

### 4. *Summary of Defendant's Letter Rogatory Request*

With respect to the questions directed at the officers of the alleged victim firms, the Defendant has failed to show either (1) that any misconduct on the part of the victim firms is material to his defense; or (2) that his questions relate to the reliability of the Newtel contracts obtained from their files. Nor do the questions directed at the banks challenge the reliability of the banks' money transfer records. Finally, Korogodsky's questions for the insurance companies have no apparent bearing on his defense in general or on the Government's § 3505 evidence in particular. Accordingly, Korogodsky's letter rogatory request is denied in its entirety.

### B. *Korogodsky's Motion to Dismiss the Indictment*

### 1. *Right to Compulsory Process*

■■■ Defendant contends that because the Court cannot subpoena Russian citizens to testify at his trial, the Indictment should be

---

7. Korogodsky has repeatedly argued that at the time that the business records were made and maintained, Russia was politically in chaos. Even if true, it would not necessarily follow that the records of the country's financial institutions are unreliable. Additionally, this is argument that can be made at a pre-trial authentication hearing through the testimony of an expert witness.

dismissed as violative of his Sixth Amendment right to compulsory process. This argument fails for two reasons. First, the right to compulsory process exists only where a defendant "make[s] some plausible showing of how [the desired witness'] testimony would have been both material and favorable to his defense." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). As explained above in the discussion of the letter rogatory request, Korogodsky has failed to show that the testimony sought from any foreign witness would be either material or favorable to his defense.

Second, the Sixth Amendment provides a right to compulsory process only if the desired witness is within the court's subpoena power. *See United States v. Greco,* 298 F.2d 247, 251 (2d Cir.1962). A court's inability to subpoena a foreign witness does not implicate the compulsory process clause, even if that witness could provide testimony that is material and favorable to the defendant. *See United States v. Zabaneh,* 837 F.2d 1249, 1259–60 (5th Cir.1988); *United States v. White,* 562 F.2d 587, 589 (8th Cir.1977); *Greco,* 298 F.2d at 251. Thus, Korogodsky's right to compulsory process is not violated though the court cannot compel the testimony of the Russian citizens whom Korogodsky may wish to call at trial.

### 2. Confrontation Clause

 Defendant has cited to no authority in support of his assertion that the confrontation clause of the Sixth Amendment requires the dismissal of the Indictment. If the admission of any of the Government's proposed evidence would violate Korogodsky's rights under the confrontation clause, then the Court will exclude the proposed evidence, not dismiss the Indictment.

It appears that the Government's § 3505 certifications contain the only testimony that Korogodsky will not have an opportunity to challenge through cross-examination. The admissibility of this evidence will be determined at a hearing to be held on April 24, 1998 at 2 p.m.

### IV. Conclusion

For the reasons stated above, Defendant's letter rogatory request and his motion to dismiss the Indictment based on the confrontation clause and the right to compulsory process and are denied. A hearing to determine the admissibility of the Government's § 3505 evidence will be held on April 24, 1998 at 2 p.m. The trial will commence on May 18, 1998 before Judge DiCarlo.