**Ronald Lee THOMPKINS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 4631, 4632.**

District of Columbia Court of Appeals.

Argued Nov. 13, 1968.

Decided April 3, 1969.

James F. Bromley, Washington, D. C., appointed by this court, for appellant.

Roger E. Zuckerman, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and Clarence A. Jacobson, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge.

Appellant was tried without a jury on charges of assault, petit larceny and receiving stolen goods. The court found appellant guilty of petit larceny[1] and assault,[2] and dismissed the stolen goods charge. He received sentences of 360 days on each of the two offenses, to run concurrently.

Appellant contends the trial court erred in (a) denying his motion to suppress evidence, and (b) failing to ascertain whether there was a proper waiver by appellant of his right to a jury trial.

The victim was walking east on R Street, N.W., at 12:30 a. m., and just before reaching 16th Street he noticed a group of about seven young men coming south on 16th Street throwing bottles and making loud noises. He crossed R Street to avoid encountering them but was seen and the group converged on him. He was grabbed from the rear, struck in the face and taken from him were: a black raincoat and rain hat, a catalog case, a thermos bottle, a wristwatch, a billfold with four dollars, and a few other minor items. The group then ran toward 17th Street. In about five minutes, a policeman arrived at the scene, had a conversation with the victim and proceeded in the patrol car toward 17th Street in search of the assailants. When he arrived at New Hampshire Avenue and Swann Street (about 2½ blocks from the scene) he observed three young men crossing the street.

The officer testified that he drove to the curb and asked the three to come over to the squad car, which they did; that a general broadcast was then coming over his radio on the incident; that he requested them to stand by while he listened to the broadcast and they complied; that when it was completed he went to the passenger side of the car and noticed that the defendant had a black raincoat in his hand and saw under the car door a brown case (a thermos bottle) which appellant had dropped there; and that at this point, since the raincoat and case matched the description of items taken from the victim, he told the three, including appellant, they were under arrest. At the time the officer announced the arrest, he had no personal identification of appellant, as the victim had been unable to furnish it due to the circumstances of the crime. The victim later arrived at the scene of the arrest and identified his property.

Insofar as pertinent, appellant's version of the arrest is that the officer pulled the car to the curb and told them to come to the car and "[t]hen he jumped out of the car and had a gun out and told us to stand there. He had a mike in his hand and called on some more police." Although the point at which the arrest occurred was not explored in any detail at the trial, the two versions of what transpired are not crucially inconsistent. The officer testified that after he listened to the broadcast, he went to the other side of the car and saw the stolen articles, which admittedly were in plain view. It was apparently a matter of seconds between the time appellant arrived

---

1. D.C.Code 1967, § 22–2202.

2. D.C.Code 1967, § 22–504.

at the car and the officer saw the stolen articles and announced the arrest. Doubtless, under the circumstances he immediately pulled his gun and called for more police at this point, especially since he was outnumbered three to one. All circumstances considered, we think it is reasonable to decide the motion to suppress question on the basis of the officer's testimony.

The threshold question is when did the arrest occur. There are only two points at which it could have occurred, (a) when the policeman stopped his car and requested the three young men to come to the car and then told them to stand there while he heard the radio broadcast concerning the crime, or (b) after the broadcast when he saw the stolen property in appellant's hand and near his feet under the car door and announced the arrest.

■ It is true that the point at which an arrest occurs is not controlled simply by when the arresting officer announces it. United States v. Washington, 249 F.Supp. 40 (D.D.C.1965). Rather, it is all the surrounding circumstances which control and each case must be examined accordingly. Hicks v. United States, 127 U.S.App.D.C. 209, 212, 382 F.2d 158, 161 (1967). It must be conceded at the outset that when the officer first saw the three youths and requested that they come to his car and remain while he listened to the radio broadcast, there was no probable cause for arrest. The officer testified with candor that he had not seen the stolen articles at this point; and the victim had been unable to furnish him with personal identification of the assailants beyond being youths.

Appellant contends it was error to deny his motion to suppress the stolen articles as there was a search and seizure without a warrant or probable cause and in viola-

tion of the fourth amendment. He argues that, accepting his version of the events, there was clearly an arrest without probable cause; and adopting the officer's version, the initial stop of appellant was either an arrest or "a wholly arbitrary detention." It is his position that since the officer had no rational basis to suspect appellant at the time of the initial stop, the "arrest and detention" violated his constitutional right to be secure from unreasonable search and seizure while walking on a public street.

■ It is important to note at the outset that there is no "search" question here as the articles in evidence were in plain view of the officer, i. e., in appellant's hand and at his feet in the gutter. Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963); Scott v. United States, D. C.App., 228 A.2d 637 (1967). Clearly, an arrest was authorized when the officer saw the stolen articles.[3] This leaves the question of whether the initial stop of appellant was an arrest or, as appellant puts it, a wholly arbitrary detention, which invalidated the subsequent seizure. We think it was neither.

It is true that the initial stop lacked reasonable grounds for suspicion of appellant. No questions were put to appellant by the officer prior to his announcement of the arrest and the record does not otherwise reveal the officer's precise purpose in stopping the three youths initially.[4]

■ We think the reasonable view of the evidence is that in making the initial stop of appellant the officer was engaged in routine on-the-street investigation in the nearby area of a crime minutes after it occurred in an early hour of the morning in his effort to find the perpetrator while the trail was warm. This occurs frequently and is one method of obtaining fresh leads

3. D.C.Code 1967, § 23–306(c).

4. Cf. Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), where the court stated "[w]e cannot tell with any certainty upon this record whether any such 'seizure' took

place here prior to Officer McFadden's initiation of physical contact for purposes of searching Terry for weapons, and we thus may assume that up to that point no intrusion upon constitutionally protected rights had occurred."

for the solution of the crime. It is permissible for an officer to stop and question pedestrians briefly under such circumstances.[5] It results necessarily in a short detention of persons and it may well be that usually they do not feel free to leave while being questioned. But to say this is not to conclude they are being "seized" or "arbitrarily detained." Of course, such questioning could spill over into an arrest, depending upon the manner of the stop and what later transpires. The question arises here because while conducting such routine investigation the officer happened to encounter appellant who was a perpetrator of the crime.

This leaves appellant's contention that since the officer was seeking the perpetrators of the crime just committed, the initial stop of appellant was necessarily illegal as he then had no cause for suspicion of him, let alone cause to arrest. A stop of pedestrians for routine interrogation, without a search, is justifiable in the circumstances of this case. The unusual factor here is the officer saw the stolen articles before any questioning began. If appellant had been innocent of any crime, it would not have been reasonable for him to consider he was being arrested or arbitrarily detained when stopped initially. *Hicks, supra,* 127 App.D.C. at 212, 382 F.2d at 161.

■ We hold that under the circumstances of this case the initial stop of appellant was neither an arrest nor an arbitrary detention. The arrest occurred after the officer saw the articles which fit the description of the stolen property. This gave sufficient cause to arrest[6] and the

seizure was not invalidated by a prior illegal search or detention.

Appellant also contends that the court below erred in accepting appellant's waiver of his right to a jury trial without determining whether the waiver was made intelligently and understandingly. At the outset of the trial the following colloquy occurred:

"The Court: Are both sides ready?

"Mr. Jacobson: The Government is ready, Your Honor.

"Mr. Rosen: Your Honor, for the record this will be a non-jury trial. The defendant has waived his right to trial by jury and will have a trial by the Court.

"The Court: Is that correct, sir? Do you understand that?

"The Defendant: Not yet.

"The Court: Well, explain it to him again, Mr. Rosen, for the record.

"Mr. Rosen: You have a right to trial by the Court and a right to trial by a jury. I have told the Judge that you will be tried by the Court alone without a jury. Is that satisfactory?

"The defendant: Yes.

"The Court: Very well."

Appellant argues that while there was a waiver expressed, there is no indication that it was done understandingly by appellant and that this negates any waiver.[7] The court, says appellant, should have made inquiry to determine whether he understood the various considerations necessary

---

5. *Cf.* Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

6. D.C.Code 1967, § 23–306(c).

7. D.C.Code 1967, § 16–705(a) provides that:
   "In a criminal prosecution within the jurisdiction of the Court of General Sessions in which, according to the Constitution of the United States, the accused would be entitled to a jury trial, the trial shall be by jury, *unless the accused in open court expressly waives trial by jury and requests to be tried by the judge.* In the latter case, the trial shall be by the judge, and the judgment and sentence shall have the same force and effect in all respects as if they had been entered and pronounced upon the verdict of a jury." (Emphasis added.)

for an intelligent decision on whether to waive a jury trial.

A waiver of trial by jury is usually for tactical reasons when a defendant is represented by counsel. It frequently occurs where, as here, there is to be substantial reliance by the defendant on a search and seizure question. There is a clear indication that appellant's waiver was upon advice of counsel.

We have held previously that a waiver of jury trial need not be made and announced by the defendant personally but may be done effectually through counsel. Eliachar v. United States, D.C.App., 229 A.2d 451, 452 (1967). In this case, we have not only an announcement by counsel in his presence of the decision to waive but appellant was then advised of his right to a jury trial and expressed approval in open court of his counsel's announcement.

We see no impairment of appellant's rights requiring reversal.

Affirmed.