**In re Sidney TINNEY, Appellant.**

No. 84-938.

District of Columbia Court of Appeals.

Argued March 11, 1986.
Decided Dec. 15, 1986.

Matthew C. Leefer, appointed by this court, for appellant.

Mark G. Gellar, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., and Steven Gordon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

Appellant Sidney Tinney was found guilty of contempt of court,[1] and sentenced to thirty months in prison. On appeal, he asserts that he was deprived of his right to trial by jury, and that the trial court should have required the government to comply with the terms of a cooperation agreement.[2] We affirm.

In March 1983, Tinney testified before a grand jury that he saw Douglas Wright shoot Robert Bush. Later, at Wright's trial, Tinney refused to answer the prosecutor's questions regarding the shooting. Tinney was represented by appointed counsel, who agreed with the trial court that Tinney had no valid privilege to refuse to testify. The presiding judge warned him that if he continued to refuse to testify, he could be held in contempt. Tinney persisted in his refusal. Eventually, the jury in the Wright case was unable to reach a unanimous verdict.

After entering a mistrial, the presiding judge issued an order directing that Tinney show cause why he should not be held in contempt for his refusal to testify. The

---

1. D.C.Code § 11–944 (1981).

2. Tinney also contends that, because the judge had already found him in contempt based on his refusal to testify at Wright's first trial, that judge was biased in ruling on the truthfulness of Tinney's testimony at Wright's second trial (Defendant's Motion to Vacate the Show Cause Order). Tinney is alleging essentially that the trial judge, in deciding whether Tinney had testified truthfully at the retrial, was influenced by tran-

scripts which were already a part of the record in the case. This allegation of bias is raised for the first time on appeal; therefore, we hold that Tinney has waived his claim. *See Marcus v. Director, Office of Workers' Compensation Programs*, 179 U.S.App.D.C. 89, 96, 548 F.2d 1044, 1051 (1976); Super.Ct.Crim.R. 57(a) (incorporating Super.Ct.Civ.R. 63–I, requiring affidavits of bias to be filed with trial court).

order informed Tinney that he was entitled to a jury trial, and certified the matter to another judge for trial. According to the jacket entry made at the status conference, the assigned judge again informed Tinney of his right to request a jury trial.

Meanwhile, Wright's retrial had been scheduled. Before it began, the prosecutor agreed with Tinney and his counsel that if Tinney testified truthfully at Wright's second trial, the government would move to dismiss the contempt proceeding. When called to the stand, Tinney, in a halting statement, told the jury that he did not know who shot Robert Bush, and that he had been mistaken when he told the grand jury that Wright was the killer. Wright was convicted.

In light of Tinney's testimony at Wright's second trial, the government refused to move for dismissal of the contempt proceedings.

On April 3, 1984, the contempt matter came before the assigned judge for trial. The parties stipulated to the evidence, including the transcript of Tinney's testimony. The trial judge did not ask Tinney whether he waived his right to a jury trial, nor did Tinney or his attorney request a jury trial. Rather, through counsel, Tinney "submitted on the record" and agreed that "the court can make a finding of guilt or innocence."

The judge found that Tinney had acted in contempt of the order that he testify at the first Wright trial. Because there was a disagreement regarding whether Tinney had testified truthfully at Wright's retrial, the judge did not enter an order of judgment. Instead, he continued the case until May 22, for a hearing to resolve that issue, as well as the ultimate issue of whether the government should be held to its agreement to move to dismiss the contempt proceeding. Tinney subsequently filed a written motion to vacate the order to show cause, arguing that he had testified truthfully at the retrial, and that the government should be held to its bargain to move for dismissal of the contempt proceeding.

At the May 22 hearing, the prosecutor first called the court's attention to the fact that at the April 3 hearing, he had neglected to ask the court to inquire whether Tinney gave up his right to a jury trial. The court then entered into the following colloquy with the appellant:

THE COURT: Do you recall what happened on April 3rd, sir, at the time of our last meeting?

MR. TINNEY: Yes, sir.

THE COURT: Do you now affirm that that's exactly what you did and you intended and what you want the court to do at this point?

MR. TINNEY: Yes, sir.

THE COURT: And you understand, sir, that you have a right to have a jury trial on this case and you can waive it and you're now seeking to waive it.

MR. TINNEY: Yes, sir.

THE COURT: All right, sir, be waived *nunc pro tunc* to April 3rd, 1984.

Following a review of Tinney's grand jury and trial testimony, the court found that Tinney had not testified truthfully at Wright's retrial. Accordingly, the court denied Tinney's motion to vacate the show cause order. Implicit in the denial was a finding that, because Tinney did not perform his side of the agreement, the government was not obligated to perform its side, *i.e.* to move to dismiss the contempt proceeding. The court sentenced Tinney to thirty months in prison for his refusal to testify at Wright's initial trial.

On appeal, Tinney first asserts that he was denied the right to a trial by jury. In light of his awareness of his right to a jury trial, and his failure to assert his right until this appeal, we reject this claim.

█ The constitutional guarantee to trial by jury applies to a contempt case in which the sentence may exceed six months. *See In re Carter*, 373 A.2d 907, 908 (D.C. 1977). Nevertheless, the right to jury trial is one that the accused has the power to waive not only in the case of a petty offense, but also in one involving a serious

crime. *(Edward) Jackson v. United States,* 498 A.2d 185, 188 (D.C.1985). When the defendant presents a jury trial waiver request, the trial judge must determine whether, in fact, there has been an express, voluntary, and intentional relinquishment of that right. *Hawkins v. United States,* 385 A.2d 744, 746 (D.C.1978). To ensure that the waiver is express, voluntary, and intentional, D.C.Code § 16–705(a) (1981) requires that the defendant in open court expressly waive trial by jury and request trial by the court. Super.Ct. Crim.R. 23(a) further mandates that the defendant's waiver of his right to trial by jury be in open court and in writing.

 Under the circumstances, we have no hesitancy in holding that Tinney voluntarily and intentionally waived his right to a jury trial. First, Tinney was well aware that he was entitled to trial by jury: the original contempt order informed him that he was entitled to a jury trial, and he was also so informed at the status hearing. At no time prior to the show cause hearing did Tinney indicate to either the government or the court that he desired a jury trial. Additionally, at the show cause hearing, Tinney submitted on the record. Because he submitted to the judge trying the contempt matter, knowing that the judge would be the trier of fact, it is difficult to avoid the conclusion that Tinney did not desire, a jury trial. At the commencement of the May 22 hearing, Tinney expressly said that he waived his right to a jury trial for purposes of both that hearing and the pre-

vious hearing at which the judge had found contempt. Had he desired a jury trial, he could have asserted his right at that point, and the court would have been obliged to grant his request. Tinney did not make such a request. Rather, he affirmed his desire to waive the right. He did so despite his knowledge that the trial judge already had concluded that his behavior had been contemptuous.

We must, however, also consider the consequences of the trial court's failure to observe the requirement of Super.Ct. Crim.R. 23(a) that a waiver of trial by jury be in writing and signed by the defendant.[3]

 This requirement was adopted to safeguard a basic constitutional right, and to avoid the creation of issues like those before us now. It is important that the rule be observed. In many sets of circumstances, no doubt, such erroneous failure to observe this rule will require reversal. But here, it is apparent that Tinney knowingly, intelligently, voluntarily, and expressly waived his right to a jury trial. His belated contention that he did not do so is belied by his own words at the May 22 hearing. The lack of a written waiver does not vitiate the intent, or the effect, of his actions.[4]

Tinney's final contention is that the trial judge applied an incorrect standard of proof when he held, based on clear and convincing evidence, that Tinney failed to live up to his side of the bargain that required him to testify truthfully at the retrial. Tinney argues that the correct

---

**3.** No case directly on point regarding the effect of the lack of a written waiver has been called to our attention. ·For instance, in *(Edward) Jackson v. United States, supra,* Jackson had previously demanded a jury trial. 498 A.2d at 186. We required that the full panoply of procedures be followed, including submission of a written waiver, to ensure that the subsequent withdrawal of that demand was voluntary and knowing. *Id.* at 189–90. Here, in contrast, Tinney never requested a jury trial. In *Hawkins v. United States, supra,* the defendant's competency was at issue. 385 A.2d at 747. Although the defendant had requested a jury trial and executed a written waiver, the court had failed to discuss waiver directly with him. *Id.* at 745–46. We reversed his conviction, holding that the

record did not adequately show a knowing and intentional waiver. *Id.* at 747. Here, those considerations of competency which in *Hawkins* particularly mandated strict adherence to the applicable rule are not present. Our earlier cases, *Payne v. United States,* 292 A.2d 800 (D.C. 1972) and *Gregory v. United States,* 271 A.2d 791 (D.C.1970) (per curiam), due to their brevity, shed little light on the situation at hand.

**4.** We emphasize that our holding does not endorse the practice of proceeding without a written waiver. Super.Ct.Crim.R. 23(a) requires a written waiver, and we expect the trial court and counsel to comply with the rule.

standard is proof beyond a reasonable doubt.

■ While it is axiomatic that the government must establish beyond a reasonable doubt every element of the charged crime, *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), the question of whether the defendant has breached a cooperation agreement does not go to guilt or innocence. Rather, it is a subsidiary issue, rooted not in culpability but in the policy of requiring fair dealing by the government. It follows that the proof of breach of a cooperation agreement by a less stringent standard does not compromise the defendant's right to require the government to prove his guilt beyond a reasonable doubt. *See Lego v. Twomey*, 404 U.S. 477, 486–87, 92 S.Ct. 619, 625, 30 L.Ed.2d 618 (1972) (government need only prove voluntariness of confession by preponderance of evidence).

While case law regarding the standard the government must meet to show breach of a cooperation agreement is sparse, courts in other jurisdictions have held that the government need prove the defendant's failure to perform the agreement by only a preponderance of the evidence. *In re James*, 96 Wash.2d 847, 849, 640 P.2d 18, 20 (1982) (en banc) (per curiam); *State v. Warren*, 124 Ariz. 396, 401, 604 P.2d 660, 665 (1979); *State v. Curry*, 3 Ohio 3d 227, 229, 49 Ohio App.2d 180, 184, 359 N.E.2d 1379, 1382 (1976); *see also* J. BOND, PLEA BARGAINING AND GUILTY PLEAS § 7.18(f) (1983). We are satisfied that these courts have correctly determined the appropriate standard of proof. A cooperation agreement between the government and a defendant is akin to a contract between the parties. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Ordinarily, the party alleging breach of contract in a civil action must prove breach by a preponderance of the evidence. *See* 30 AM.JUR.2D *Evidence* § 1163 (1967). We hold that standard applicable here.

By requiring the government to establish appellant's breach of the plea agreement by the higher standard of clear and convincing evidence, the trial judge gave appellant a procedural advantage to which appellant was not entitled. Since the evidence was sufficient to support the trial judge's finding, we sustain that finding. Tinney's conviction for contempt of court is therefore

*Affirmed.*