SCHWELB, Associate Judge:
 

 Following a trial by the court sitting without a jury, Rosa Lopez was found guilty of assaulting her supervisor, in violation of D.C.Code § 22-504 (1989).
 
 [1]
 
 On appeal, her primary contention is that a bench trial was impermissible because she had not effectively waived her right to a jury trial. We remand for further proceedings.
 

 I
 

 On September 17, 1990, the date of the incident which precipitated the charges against her, Ms. Lopez was twenty-four years old. A native of Honduras, she had been living in the United States for a little over a year. According to the Pretrial Service Agency Report, she had five years of education, presumably in Honduras. Ms. Lopez was unable to speak English, and required an interpreter for all court proceedings.
 

 At the time of the alleged assault, Ms. Lopez was engaged in janitorial work at McLean Gardens, an apartment complex in northwest Washington. The prosecution presented evidence tending to show that Ms. Lopez assaulted her supervisor, Teresa Martinez, an older, smaller, and less robust woman, by striking her with an umbrella, choking her, and throwing her into the bushes. Ms. Lopez denied using the umbrella and contended that she had acted in self-defense.
 

 At arraignment, Ms. Lopez demanded a jury trial, and the case was placed on the jury calendar. On the day of trial, however, the following colloquy occurred:
 

 THE COURT: Mr. Pietz [defense counsel], I see that you, your client, as well as the United States Attorney, have all signed a waiver of trial by jury; is that correct?
 

 [DEFENSE COUNSEL]: Yes, your Hon- or.
 

 THE COURT: I take it you have explained to Miss Lopez that if she waives a jury, I, as the judge, will not only determine the law but I will find the facts which otherwise would have been done by a jury?
 

 [DEFENSE COUNSEL]: Yes, your Hon- or. I have explained that to her myself on prior occasions and I’ve done it through the aid of the official interpreter this morning.
 

 THE COURT: Very well. And it’s with that understanding that she’s signed the waiver; is that correct?
 

 [DEFENSE COUNSEL]: Yes, your Hon- or.
 

 THE COURT: It’s understood she had a right to have a jury panel separately—
 

 [DEFENSE COUNSEL]: Yes. The interpreter—
 

 THE COURT: — to decide the facts and return a verdict?
 

 [DEFENSE COUNSEL]: Yes. The interpreter was present with me and every
 
 *1142
 
 thing was explained to the interpreter this morning. And I had earlier explained it to her on other occasions by myself.
 

 THE COURT: May I speak to your— your client directly? Is that correct, Miss Lopez?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Please be seated.
 

 [DEFENSE COUNSEL]: Yes, thank you.
 

 THE DEPUTY CLERK: I’ve made the entry, Mr. Pietz.
 

 [DEFENSE COUNSEL]: Thank you very much.
 

 The prosecutor, the defense attorney, Ms. Lopez and the judge all signed a waiver of jury form in the Spanish language.
 

 Without objection, the case proceeded to trial before the court. After Ms. Lopez was convicted of the assault charge, the judge suspended imposition of sentence, placed Ms. Lopez on unsupervised probation for three months, and fined her $25.00. This appeal followed.
 
 [2]
 

 II
 

 The principal question to be decided on this appeal is whether, by signing the waiver and by saying the single word “yes,” Ms. Lopez effectively waived her right to trial by a jury of her peers. Although that question appears on its face to be beguilingly simple, it requires us to construe both a District of Columbia statute and a Superi- or Court rule, and also to attempt to harmonize some all but irreconcilable case authority.
 

 Section 16-705(a) of the District of Columbia Code (1989) provides in pertinent part as follows:
 

 In a criminal case tried in the Superior Court in which, according to the Constitution of the United States, the defendant is entitled to a jury trial, the trial shall be by jury, unless the defendant in open court expressly waives trial by jury and requests trial by the court, and the court and the prosecuting officer consent thereto.
 

 The applicable court rule provides that
 

 [c]ases required to be tried by jury shall be so tried unless the defendant in open court
 
 orally and in writing
 
 waives a jury trial with the approval of the Court and the consent of the prosecuting officer.
 

 Super.Ct.Crim.R. 23(a) (emphasis added). Our Rule 23(a) differs from its federal counterpart, which does not include the words “orally and,” (but is otherwise identical). Fed.R.Crim.P. 23(a). This distinction between the two rules suggests that the drafters of the Superior Court rule considered the requirement of an oral waiver to be a meaningful one.
 

 From the perspective of the defendant, the case law in this jurisdiction has had its ebbs and flows. A useful starting point in our discussion is
 
 Hensley v. United States,
 
 108 U.S.App.D.C. 242, 281 F.2d 605 (1960),
 
 aff'g
 
 155 A.2d 77 (D.C.1959). In that case, after a jury had been selected, Hensley’s counsel approached the bench and requested a bench trial. In Hensley’s presence, the judge released the jury. Hensley was convicted, and argued on appeal that he had not expressly waived his right to a jury trial, as required by the predecessor of § 16-705(a). The Municipal Court of Appeals affirmed, and the United States Court of Appeals did likewise. After construing the statutory reference to “an accused” as including defense counsel for purposes of waiver of the right to jury trial, the federal appellate court remarked that Hensley “was apparently content to take his chances [on a non-jury trial], and he cannot now be heard to complain after receiving an unfavorable finding.” 108 U.S.App.D.C. at 245, 281 F.2d at 608.
 
 [3]
 

 The
 
 Hensley
 
 approach remained in effect for some time. In
 
 Eliachar v. United States,
 
 229 A.2d 451, 452 (D.C.1967), this court reiterated, on the authority of
 
 Hensley,
 
 that where defense counsel had asked for a bench trial, it was not mandatory that
 
 *1143
 
 the accused personally indicate his acquiescence in the waiver. The same result was reached in
 
 Thompkins v. United States,
 
 251 A.2d 636, 639-40 (D.C.1969) (citing
 
 Eliachar).
 
 The following year, however, in
 
 [Frederick] Jackson v. United States, 262
 
 A.2d 106 (D.C.1970), the court embarked in a new direction, and initiated the line of case authority upon which Ms. Lopez now relies.
 

 In
 
 [Frederick] Jackson,
 
 the transcript of proceedings available to the appellate court contained nothing at all to indicate that Jackson had waived his right to a jury trial. Stamped notations reading “Jury Trial Demand Withdrawn” on the back of both charge sheets constituted the only evidence on which a finding of waiver could be based. This court remanded the case for a hearing to determine whether Jackson had “knowingly and voluntarily waived his right to a jury trial in open court.”
 
 Id.
 
 at 108. In doing so, the court, citing (among other authorities)
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), imposed new obligations on the trial court:
 

 An on-the-record inquiry of a .defendant himself by the trial judge in open court would more readily facilitate the trial judge’s determination, and the determination in any post-conviction proceedings, that the waiver was in fact voluntary. Also, such a procedure more fully complies with the statutory directive that the “accused in open court expressly [waive]” his right to jury trial and request trial by the court.
 

 Id.
 
 at 109. Quoting
 
 Patton v. United States,
 
 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930), the court warned that the duty of the trial court “is not to be discharged as a mere matter of rote,[
 
 4
 
 ] but with sound and advised discretion.”
 
 Id.
 
 n. 6. Declining to ordain a particular script, the court concluded as follows:
 

 We do hold that henceforth, in trials commenced after the issuance of this opinion, there should be in the record a statement in open court by the defendant himself in order to provide a basis for subsequently determining, if necessary, that he knowingly and voluntarily waived his constitutional right to trial by jury. We will expect the prosecutor to assist the trial court in complying with our ruling.
 

 Id.
 
 (footnotes omitted).
 
 [5]
 

 On the same day that
 
 [Frederick] Jackson
 
 was decided, the court also issued its opinion in
 
 Banks v. United States,
 
 262 A.2d 110 (D.C.1970) (per curiam). Banks, who was charged with false pretenses, had initially wished to plead guilty. The judge advised him that, by doing so, he would waive his right to trial by the court or by jury. The plea proceedings broke down, and defense counsel asked for “another jury date.”
 
 Id.
 
 at 111. Banks was subsequently convicted at a bench trial. The appellate record, as in
 
 [Frederick] Jackson,
 
 contained an entry on the back of the information reading “Jury Trial Demand Withdrawn.” Although there was no evidence of an oral waiver in open court, this court affirmed Banks’ conviction upon the ground that “the discussion in open court at the first hearing about a jury trial for appellant and the official court entry on the information itself cured the absence from the transcript of any waiver.”
 
 Id.
 

 Less than a year after
 
 [Frederick] Jackson
 
 and
 
 Banks
 
 had sent out messages more readily reconcilable in result than in spirit, our court revisited the issue in
 
 Gregory v. United States,
 
 271 A.2d 791 (D.C.1970) (per curiam). In that case, defense counsel informed the judge that Gregory insisted on having a nonjury trial. Gregory confirmed his counsel’s position, saying that he “preferred]” not to be tried by jury unless it was “necessary.”
 
 Id.
 
 at 792. Gregory was then convicted at a bench trial. We affirmed, holding that “[t]his record clearly reflects a knowledgeable waiver of a jury trial by the appellant.”
 
 Id.
 
 Noting that the
 
 [Frederick] Jackson
 
 decision had suggested “an ideal procedure for the trial court to follow,” and observing
 
 *1144
 
 wryly that “it might be said that the record in this ease is somewhat less than ideal,” the court was nevertheless satisfied that Gregory did not want a jury trial and that the judge’s inquiry was sufficient.
 
 Id.
 
 at 792-93.
 

 Not long after court reorganization and
 
 M.A.P. v. Ryan,
 
 285 A.2d 310 (D.C.1971) made decisions of this court the final word on the law of the District of Columbia, the question whether a defendant had sufficiently waived his right to a jury trial arose once again. In
 
 Payne v. United States,
 
 292 A.2d 800 (D.C.1972), the trial court denied the defendant’s motion to suppress the evidence against him. Immediately thereafter, the defense attorney stated that “Mr. Payne requests a trial by the court.” Payne said nothing, and no written waiver was executed. Pointing out that there had been no compliance with Rule 23(a), with § 16-705(a), or with the
 
 [Frederick] Jackson
 
 procedures, the court reversed Payne’s conviction.
 
 [6]
 

 Id.
 
 at 802. Understandably, the court indicated some exasperation with the state of the record:
 

 In this time of clogged criminal dockets we simply cannot dissipate judicial and prosecutive resources, already stretched too thin, in attempting to reconstruct skimpy records or to fill the void in empty records on appeal.
 

 Id.
 
 at n. 4 (quoting
 
 [Frederick] Jackson, supra,
 
 262 A.2d at 108-09).
 

 Shortly after
 
 Payne
 
 came
 
 Hicks v. United States,
 
 296 A.2d 615 (D.C.1972).
 
 Hicks
 
 presented a scenario similar in some respects to the present case. The defendant executed a written waiver of his right to a jury trial. His oral waiver consisted of a single word, as reflected in the following dialogue:
 

 MR. SCHAEFFER [defense counsel]: If it please the Court, we demanded a jury trial in this case, and I have discussed this case fully with this defendant and explained it to him, and he understands it, and he now wants to take a trial by the court. Am I right?
 

 MR. HICKS: Right.
 

 MR. SCHAEFFER: He knows he’s entitled to a trial by the jury.
 

 THE COURT: The defendant has withdrawn his demand for a jury trial. Does the Government consent?
 

 MR. SCHAUMBER [prosecutor]: Yes, Your Honor.
 

 THE COURT: All right.
 

 Id.
 
 at 616-17. This court found the waiver sufficient, citing
 
 Gregory
 
 for the proposition that something less than full compliance with
 
 [Frederick] Jackson
 
 procedures would be tolerated, but returned emphatically to the
 
 Jackson
 
 theme:
 

 We again admonish the trial judges of Superior Court to personally make an on-the-record inquiry of those defendants who express a desire to waive trial by jury, with a request for trial by the court,
 
 and to explore the matter in sufficient depth so as to remove any doubt that the waiver was the result of a defendant’s voluntary and knowing choice.
 

 Id.
 
 at 617 (emphasis added).
 

 The next occasion for this court to revisit the waiver issue came almost six years later in
 
 Hawkins v. United States,
 
 385 A.2d 744 (D.C.1978). Hawkins was charged with several serious felonies. Before his trial began, he signed a jury trial waiver form. The judge then asked counsel whether Hawkins “understands he’s giving up his right to a jury and I’ll be hearing the facts and judging the law?”
 
 Id.
 
 at 746. Counsel responded “Yes. We’ve gone over that with him.”
 
 Id.
 
 At no point did the judge discuss the jury trial waiver directly with Hawkins.
 
 Id.
 

 Hawkins was convicted at the ensuing bench trial of all the charges against him. On appeal, this court reversed and remanded the case for a new trial. After discussing its prior decision in
 
 [Frederick] Jackson
 
 and its reluctant tolerance (in
 
 Gregory
 
 and Hicks) of procedures which fell short of the
 
 Jackson
 
 “ideal,” this court reiterated that a meaningful interrogation of the defendant personally was required to ensure an effective waiver:
 

 
 *1145
 
 To be effective, there must be an oral inquiry of the defendant himself in open court, his replies to which indicate that he understands the nature of his right to a jury trial and that he chooses to waive that right. This oral waiver must accompany a written waiver, signed by the defendant. A written waiver by the defendant coupled with an oral waiver by defense counsel is
 
 not
 
 sufficient.
 

 Id.
 
 at 747 (emphasis in original).
 
 [7]
 

 Seven years after
 
 Hawkins
 
 came
 
 [Edward] Jackson v. United States,
 
 498 A.2d 185 (D.C.1985). Jackson, charged with three possessory weapons offenses, moved to suppress the evidence against him. The trial judge denied the motion, and defense counsel requested a trial on stipulated facts. After the attorneys had agreed to a stipulation, but without any inquiry of the defendant, the judge found him guilty as charged. This court reversed Jackson’s conviction, emphasizing that “the grant of jury trial is a fundamental right,”
 
 id.
 
 at 187,
 
 (citing Duncan v. Louisiana,
 
 391 U.S. 145, 157-58, 88 S.Ct. 1444, 1451-52, 20 L.Ed.2d 491 (1968)), that it is the “constitutionally preferred method of disposing of criminal cases,”
 
 id.
 
 at 188,
 
 (citing Patton, supra,
 
 281 U.S. at 312, 50 S.Ct. at 263), that a waiver is effective only if it is based on the “express and intelligent consent of the defendant,”
 
 id.
 
 at 189, (again
 
 citing Patton, supra,
 
 281 U.S. at 312, 50 S.Ct. at 263), and that this court’s decisions, beginning with
 
 [Frederick] Jackson
 
 and
 
 Payne
 
 and ending with
 
 Hawkins,
 
 had articulated the proper procedures for the trial court to follow.
 
 Id.
 

 In our most recent case on the subject at hand,
 
 In re Tinney,
 
 518 A.2d 1009 (D.C.1986), the defendant was convicted at a bench trial of criminal contempt of court. At the hearing at which the judge found that Tinney had acted contemptuously, Tin-ney was not asked whether he waived his right to a jury trial. On the other hand, Tinney had never requested a jury trial. At a second hearing a few weeks later, the following colloquy occurred:
 

 THE COURT: Do you recall what happened on April 3rd, sir, at the time of our last meeting?
 

 MR. TINNEY: Yes, sir.
 

 THE COURT: Do you now affirm that that’s exactly what you did and you intended and what you want the court to do at this point?
 

 MR. TINNEY: Yes, sir.
 

 THE COURT: And you understand, sir, that you have a right to have a jury trial on this case and you can waive it and you’re now seeking to waive it.
 

 MR. TINNEY: Yes, sir.
 

 THE COURT: All right, sir, be waived
 
 nunc pro tunc
 
 to April 3rd, 1984.
 

 Id.
 
 at 1011. At no time did Tinney sign a jury waiver form.
 

 Recognizing that the judge had failed to comply with Super.Ct.Crim.R. 23(a), which requires both a written and oral waiver, this court nevertheless affirmed Tinney’s conviction. Noting that Rule 23(a) was “adopted to safeguard a basic constitutional right,” and that “in many sets of circumstances such erroneous failure to observe this rule will require reversal,” the court found it to be
 

 apparent that Tinney knowingly, intelligently, voluntarily, and expressly waived his right to a jury trial. His belated contention that he did not do so is belied by his own words at the May 22 hearing. The lack of a written waiver does not vitiate the intent, or the effect, of his actions.
 

 Id.
 
 at 1012. The court distinguished
 
 [Edward] Jackson
 
 and
 
 Hawkins
 
 in a footnote:
 

 No case directly on point regarding the effect of the lack of a written waiver has been called to our attention. For instance, in
 
 [Edward] Jackson v. United States, supra,
 
 Jackson had previously demanded a jury trial. 498 A.2d at 186. We required that the full panoply of pro
 
 *1146
 
 cedures be followed, including submission of a written waiver, to ensure that the subsequent withdrawal of that demand was voluntary and knowing.
 
 Id.
 
 at 189-90. Here, in contrast, Tinney never requested a jury trial.
 
 In Hawkins v. United States, supra,
 
 the defendant’s competency was at issue. 385 A.2d at 747. Although the defendant had requested a jury trial and executed a written waiver, the court had failed to discuss waiver directly with him.
 
 Id.
 
 at 745-46. We reversed his conviction, holding that the record did not adequately show a knowing and intentional waiver.
 
 Id.
 
 at 747. Here, those considerations of competency which in
 
 Hawkins
 
 particularly mandated strict adherence to the applicable rule are not present.
 

 Id.
 
 at n. 3.
 

 [[Image here]]
 

 The lessons we draw from our precedents are two-fold. First, at least where, as here, the defendant has demanded a jury trial, she must personally waive her right to a jury trial both orally and in writing. The oral waiver should be preceded by a meaningful dialogue between the judge and the defendant in which the judge is persuaded that the defendant has elected voluntarily and knowingly to waive that right.
 
 See, Hawkins supra,
 
 385 A.2d at 747.
 
 [8]
 

 The second lesson which we derive from our prior cases is that a conviction should not be reversed, and a new trial should not be ordered, if the court is satisfied, irrespective of the trial court’s failure to adhere to the required procedures, that the defendant fully understood his or her rights and agreed to trial by the court without a jury. Cases like
 
 Hicks,
 
 in which the defendant said only a single word, and
 
 Tinney,
 
 where there was no written waiver at all, are most readily explainable by the court’s understandable (and justifiable) reluctance to reverse a conviction for some symbolic error or omission which resulted in no prejudice.
 
 [9]
 
 We think that this second goal—an important one—can best be achieved by the judicious fashioning of a remedy, rather than by relaxing unduly the standard set in
 
 [Frederick] Jackson
 
 and
 
 Hawkins.
 

 Ill
 

 We now apply the foregoing principles to the inquiry conducted by the trial judge in the present case. It is undisputed that Ms. Lopez executed a written waiver. Under
 
 Hawkins,
 
 however, that is not sufficient, and we must therefore assess the adequacy of the inquiry which led to the purported oral waiver in open court. We do not think that the record is sufficient to demonstrate a knowing and voluntary waiver.
 

 The entire colloquy among court, counsel and the defendant has been reproduced at page 1141,
 
 supra.
 
 Ms. Lopez’ participation in the discussion was limited to a single word: “yes.” The meaning of that word must be derived from the discussion that preceded it.
 

 The immediate interchange between the judge and Ms. Lopez was as follows:
 

 THE COURT: May I speak to your— your client directly? Is
 
 that
 
 correct, Miss Lopez?
 

 THE DEFENDANT: Yes.
 

 (Emphasis added.) What Ms. Lopez meant by “yes” turns on the 'antecedent for the pronoun
 
 “that.”
 

 The government argues that, in context, the word
 
 “that”
 
 refers back to defense counsel’s representation, such as it was, that the difference between a bench trial and a jury trial had been explained to Ms. Lopez. This is certainly a plausible inference, perhaps the most plausible one. Ms. Lopez could also, however, have been responding affirmatively to the judge’s question whether he could speak to her; “yes”
 
 *1147
 
 could have meant “yes, I understand you wish to address me.” Ms. Lopez could also have understood “[i]s that correct, Miss Lopez?” to be an inquiry about her name, and her response, “yes,” may have been designed simply to confirm that her name was Lopez. At oral argument in this court the prosecutor acknowledged with commendable candor that, in this context, there was at least some measure of ambiguity with respect to the meaning of the word “yes.”
 
 [10]
 

 According to the Pretrial Services Agency report, Ms. Lopez completed five years of schooling, evidently in Honduras. The report also revealed that she had had no prior contact with the criminal justice system. ’ She was engaged in janitorial work. It is common knowledge, and we judicially notice, that the American jury system does not exist in civil law countries, including Honduras.
 
 See, e.g., In re Circle Trading Corp.,
 
 26 F.2d 193, 195 (2d Cir.1928) (“[i]t is common knowledge that civil law prevails in the Argentine, and that trusts in the ordinary sense are unknown to that law”);
 
 Leary v. Gledbill,
 
 8 N.J. 260, 267-69, 84 A.2d 725, 729 (1951);
 
 cf. Dainese v. Hale,
 
 91 U.S. 13, 20-21, 23 L.Ed. 190 (1875).
 

 To be sure, defense counsel stated, in response to the judge’s questions, that he had explained to his client that if she waived trial by a jury, the court would find the facts as well as the law, but that if she elected a jury trial, the jurors would decide the facts and return a verdict. In a jury trial, however, twelve jurors must unanimously find guilt beyond a reasonable doubt, whereas at a bench trial, the prosecution must persuade only one trier of fact, namely the judge. In spite of Ms. Lopez’ background, no mention was made of any of this. In our view, it takes a leap of faith to conclude, on the basis of the colloquy in the record, that Ms. Lopez comprehended the difference between a jury trial and a bench trial, or that she made an express, deliberate, and intelligent waiver of a right which she meaningfully understood. The matter was not explored “in sufficient depth so as to remove any doubt that the waiver was the result of a defendant’s voluntary and knowing choice.”
 
 Hicks, supra,
 
 296 A.2d at 617. We therefore hold that the judge’s inquiry fell short of the standards set forth in Rule 23(c) and in D.C.Code § 16-705(a).
 
 [11]
 

 IV
 

 We turn now to the proper remedy. In cases in which we have found the judge’s inquiry to be insufficient, we have generally ordered a new trial.
 
 See, e.g., Hawkins, supra,
 
 385 A.2d at 747;
 
 [Edward] Jackson, supra,
 
 498 A.2d at 190. In other cases, in which the circumstances were unclear, we remanded for further proceedings.
 
 [Frederick] Jackson, supra,
 
 262 A.2d at 109. Although the present case is similar in some respects to
 
 Hawkins
 
 and
 
 [Edward]
 
 Jackson,
 
 there are persuasive reasons not to set the conviction aside without further trial court proceedings.
 

 Ms. Lopez has complained in this court that the trial judge’s inquiry was insufficient, but she has never specifically asserted either that she did not understand her rights or that she wanted a jury trial. If, in fact, she did understand her rights, and if she made a knowing and deliberate choice of a non-jury trial — the very scenario depicted by her own counsel in the trial court — no useful purpose would be served by setting aside her conviction on the basis of shortcomings in the proceedings which
 
 *1148
 
 did not affect her choice. Indeed, to order a new trial upon such a state of facts would waste scarce judicial resources and would be contrary to the public interest.
 
 See Allen v. United States,
 
 603 A.2d 1219, 1228 & n. 19 (D.C.1992) (en banc). If, on the other hand, Ms. Lopez claims that she did not knowingly and intentionally waive her right to a jury trial — if, in other words, she asserts that she did not understand what she was doing — then the trial court should hold an evidentiary hearing and make an appropriate finding.
 

 Accordingly, we remand the case to the trial court for further proceedings. If Ms. Lopez maintains in good faith that she did not understand the nature of her right to a trial by jury and that she did not knowingly and intentionally waive it, she may, within a reasonable time to be set by the trial court, file an affidavit to that effect. If a sufficient affidavit is timely filed, the trial judge shall conduct a hearing to determine if Ms. Lopez’ pretrial waiver of her right to a jury trial was in fact an understanding and intentional one. If he finds that it was, Ms. Lopez’ conviction shall stand.
 
 [12]
 
 If he finds that it was not, he shall set aside her conviction and order a jury trial.
 

 Remanded,
 
 [13]
 

 [1]
 

 . Ms. Lopez was found not guilty of a companion charge of possession of a prohibited weapon (an umbrella) with the intent to use it unlawfully (PPW).
 

 [2]
 

 . In the notice of appeal, trial counsel described the issues on appeal as follows: "Whatever issues may occur to appellate counsel.”
 

 [3]
 

 . We have forcefully reiterated in several recent cases the point made in the language quoted in the text.
 
 See, e.g., Hunter v. United States,
 
 606 A.2d 139, 144 (D.C.1992);
 
 Hopkins v. United States,
 
 595 A.2d 995, 996 n. 3 (D.C.1991).
 

 [4]
 

 . The word "rote,” as used in
 
 Patton,
 
 was incorrectly copied in the
 
 Jackson
 
 opinion as "note.”
 

 [5]
 

 . In
 
 Towler v. United States,
 
 271 A.2d 553, 555-56 (D.C.1970), the record was likewise silent as to how the defendant had waived his right to a jury trial. This court, following
 
 [Frederick] Jackson,
 
 remanded the case to the trial court for a determination as to whether there was a knowing and voluntary waiver.
 

 [6]
 

 . The court noted that the Rule’s requirement of a written waiver was not yet in effect at the time
 
 [Frederick] Jackson
 
 was decided.
 
 Payne,
 
 292 A.2d at 802 n. 4.
 

 [7]
 

 . After an evaluation at Saint Elizabeths Hospital, Hawkins had been found competent to stand trial. In reversing his conviction because the trial judge had failed to inquire orally whether Hawkins knowingly and voluntarily waived his right to trial by jury, the court stated that “[w]hile such inquiry is mandated in all cases, it is particularly crucial (and must be more detailed to insure its validity) in cases such as this where the trial court is faced with questions of competency and mental responsibility.”
 
 Id.
 

 [8]
 

 . In a case such as the present one, in which the defendant comes from a foreign culture, speaks no English, and at best has only a rudimentary education, a brief inquiry into the defendant’s ability to understand the nature of a jury trial is also appropriate.
 
 See, e.g., United States v. Delgado,
 
 635 F.2d 889, 890 (7th Cir.1981).
 

 [9]
 

 .
 
 Tinney
 
 can also be reconciled with
 
 Hawkins
 
 on the basis that no jury demand was made in
 
 Tinney,
 
 and that under these circumstances the requirements for a waiver should be less exacting.
 

 [10]
 

 . The problem is further complicated by Ms. Lopez’ inability to speak English, and the consequent need for the judge’s question to be translated to her. The Spanish translation of the enigmatic "that" is not before us. This makes it even more difficult for us to be sure about what Ms. Lopez thought it meant and about what she meant when she said "yes.”
 

 [11]
 

 . We recognize the similarity between the facts of the present case and those in
 
 Hicks,
 
 but we find two distinctions to be decisive. First, in
 
 Hicks,
 
 there was no ambiguity as to what the defendant was talking about when he confirmed that he did not want a jury trial. Second,
 
 Hicks
 
 was decided twenty years ago, and the court made clear its view, which we have reiterated on several occasions since, that a more detailed inquiry should have been conducted. It is reasonable to enforce the requirements of
 
 [Frederick] Jackson
 
 more vigorously when they have been in effect for twenty-two years than we did in their (comparative) youth.
 

 [12]
 

 . The conviction shall, of course, likewise stand if Ms. Lopez fails to file the requisite affidavit.
 

 [13]
 

 . With respect to Ms. Lopez' remaining contention, we agree with the government that the trial judge did not err by failing to state explicitly in his findings that Ms. Lopez had not acted in self-defense. No specific findings of fact were requested by the defense.
 
 See
 
 Super.Ct.Crim.R. 23(c);
 
 United States v. Ochoa,
 
 526 F.2d 1278, 1282 n. 6 (5th Cir.1976). Moreover, we think that the judge implicitly rejected the self-defense claim in the findings which he did make.